# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: 1:09−cv−01607−KBJ

ALKANANI v. AEGIS DEFENSE SERVICES, LLC et al
Assigned to: Judge Ketanji Brown Jackson
Cause: 28:1332 Diversity−Personal Injury

Date Filed: 08/24/2009
Date Terminated: 03/26/2014
Jury Demand: Plaintiff
Nature of Suit: 360 P.I.: Other
Jurisdiction: Diversity

**Plaintiff**

**KHADIM ALKANANI**
*individual*

represented by **Andrea L. Moseley**
DiMuroGinsberg PC
1101 King St Ste 610
Alexandria, VA 22314
(703) 684−4333
Fax: (703) 548−3181
Email: AMoseley@dimuro.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Shereef H. Akeel**
AKEEL &VALENTINE, PLC
888 West Big Beaver
Suite 910
Troy, MI 48084
(248) 269−9595
Fax: (248) 269−9119
Email: shereef@akeelvalentine.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**AEGIS DEFENSE SERVICES, LLC**
*TERMINATED: 09/16/2013*

represented by **David W. DeBruin**
JENNER &BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
(202) 639−6015
Fax: (202) 639−6066
Email: ddebruin@jenner.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David Andrew Handzo**

JENNER &BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
(202) 639−6085
Fax: 202−639−6066
Email: dhandzo@jenner.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Matthew E. Price**
JENNER &BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
(202) 639−6873
Fax: (202) 661−4802
Email: mprice@jenner.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**AEGIS DEFENCE SERVICES LIMITED**     represented by **David Andrew Handzo**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Matthew E. Price**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**UNIDENTIFIED AEGIS EMPLOYEES AND/OR AGENTS**

| Date Filed | # | Page | Docket Text |
|------------|---|------|-------------|
| 08/24/2009 | 1 | | COMPLAINT against AEGIS DEFENSE SERVICES, LLC, AEGIS DEFENCE SERVICES LIMITED, UNIDENTIFIED AEGIS EMPLOYEES AND/OR AGENTS ( Filing fee $ 350, receipt number 4616023471) filed by KHADIM ALKANANI. (Attachments: # 1 Exhibit A, # 2 Civil Cover Sheet)(rdj) (Entered: 08/25/2009) |
| 08/24/2009 | | | Summons (2) Issued as to AEGIS DEFENSE SERVICES, LLC, AEGIS DEFENCE SERVICES LIMITED. (rdj) (Entered: 08/25/2009) |
| 09/01/2009 | 2 | | Case reassigned to Judge John D. Bates. Judge Thomas F. Hogan no longer assigned to the case. (gt, ) (Entered: 09/01/2009) |
| 09/01/2009 | 3 | | Case reassigned to Judge Richard W. Roberts. Judge John D. Bates no longer |

| | | assigned to the case. (gt, ) (Entered: 09/01/2009) |
|---|---|---|
| 09/11/2009 | 4 | Unopposed MOTION for Extension of Time to File Response/Reply *to Plaintiff's Complaint* by AEGIS DEFENSE SERVICES, LLC (DeBruin, David) (Entered: 09/11/2009) |
| 09/21/2009 | | MINUTE ORDER: It is hereby ORDERED that the defendant's unopposed motion 4 for a 45–day extension of time to respond to the plaintiff's complaint, be and hereby is, GRANTED. Signed by Judge Richard W. Roberts on 9/21/09. (lcrwr2) (Entered: 09/21/2009) |
| 09/21/2009 | | Set/Reset Deadlines: Plaintiff's Response due by 10/30/2009. (hs) (Entered: 09/21/2009) |
| 10/30/2009 | 5 | ANSWER to 1 Complaint, *And Jury Demand* by AEGIS DEFENSE SERVICES, LLC. Related document: 1 Complaint, filed by KHADIM ALKANANI.(DeBruin, David) (Entered: 10/30/2009) |
| 11/03/2009 | 6 | NOTICE of Appearance by Shereef Akeel on behalf of KHADIM ALKANANI (Akeel, Shereef) (Entered: 11/03/2009) |
| 11/06/2009 | 7 | ORDER SETTING INITIAL SCHEDULING CONFERENCE for December 10, 2009 at 9:30 a.m. Joint LCvR 16.3 report due five business days prior. Signed by Judge Richard W. Roberts on 11/6/09. (lcrwr2) (Entered: 11/06/2009) |
| 11/09/2009 | | Set/Reset Hearings: Initial Scheduling Conference set for 12/10/2009 at 09:30 AM in Courtroom 9 before Judge Richard W. Roberts. (hs) (Entered: 11/09/2009) |
| 12/03/2009 | 8 | MEET AND CONFER STATEMENT by USA by KHADIM ALKANANI. (Akeel, Shereef) Modified event title on 12/4/2009 (znmw, ). (Entered: 12/03/2009) |
| 12/07/2009 | 9 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. AEGIS DEFENCE SERVICES LIMITED served on 11/16/2009, answer due 12/7/2009 (Akeel, Shereef) (Entered: 12/07/2009) |
| 12/10/2009 | | Minute Entry for Initial Status Conference held before Judge Richard W. Roberts on 12/10/09 : Scheduling Order to be issued. Post–Discovery Status Conference set for 8/6/10 at 9:15 AM in Courtroom 9 before Judge Richard W. Roberts. (Court Reporter : Scott Wallace) (kk) (Entered: 12/10/2009) |
| 12/10/2009 | 10 | SCHEDULING ORDER. Signed by Judge Richard W. Roberts on 12/10/09. (lcrwr2) (Entered: 12/10/2009) |
| 12/14/2009 | | Set/Reset Deadlines/Hearings: Discovery due by 1/25/2010, Dispositive Motions due by 9/7/2010, Motion for Joinder of Parties due by 2/10/2010. Status Conference set for 8/6/2010 at 09:15 AM in Courtroom 9 before Judge Richard W. Roberts. (hs) (Entered: 12/14/2009) |
| 12/18/2009 | 11 | NOTICE of Appearance by David Andrew Handzo on behalf of AEGIS DEFENSE SERVICES, LLC (Handzo, David) (Entered: 12/18/2009) |
| 12/18/2009 | 12 | MOTION for Summary Judgment *And Statement Of Points And Authorities In Support* by AEGIS DEFENSE SERVICES, LLC (Attachments: # 1 Text of Proposed Order)(Handzo, David) (Entered: 12/18/2009) |

3

| | | |
|---|---|---|
| 12/18/2009 | 13 | Statement Of Material Facts In Support Of Its Motion For Summary Judgement re 12 MOTION for Summary Judgment *And Statement Of Points And Authorities In Support* by AEGIS DEFENSE SERVICES, LLC (Attachments: # 1 Exhibit A, # 2 Exhibit A – 1, # 3 Exhibit A – 2)(Handzo, David) Modified on 12/22/2009 to correct docket text(jf, ). (Entered: 12/18/2009) |
| 12/18/2009 | 14 | Corporate Disclosure Statement by AEGIS DEFENSE SERVICES, LLC. (Attachments: # 1 Certificate of Service)(Handzo, David) (Entered: 12/18/2009) |
| 12/18/2009 | 15 | NOTICE of Appearance by David Andrew Handzo on behalf of AEGIS DEFENCE SERVICES LIMITED (Handzo, David) (Entered: 12/18/2009) |
| 12/18/2009 | 16 | MOTION to Dismiss for Lack of Jurisdiction by AEGIS DEFENCE SERVICES LIMITED (Attachments: # 1 Text of Proposed Order)(Handzo, David) (Entered: 12/18/2009) |
| 12/18/2009 | 17 | MEMORANDUM re 16 MOTION to Dismiss for Lack of Jurisdiction filed by AEGIS DEFENCE SERVICES LIMITED by AEGIS DEFENCE SERVICES LIMITED. (Attachments: # 1 Exhibit A)(Handzo, David) (Entered: 12/18/2009) |
| 12/18/2009 | 18 | Corporate Disclosure Statement by AEGIS DEFENCE SERVICES LIMITED. (Attachments: # 1 Certificate of Service)(Handzo, David) (Entered: 12/18/2009) |
| 02/02/2010 | 26 | CASE REFERRED to Magistrate Judge Deborah A. Robinson for 19 Joint MOTION For Entry of a Protective Order and Statement Of Points and Authorities in Support Thereof by AEGIS DEFENCE SERVICES LIMITED, AEGIS DEFENSE SERVICES, LLC, KHADIM ALKANANI. (kb) (Entered: 02/16/2010) |
| 02/03/2010 | 19 | Joint MOTION For Entry of a Protective Order and Statement Of Points and Authorities in Support Thereof by AEGIS DEFENCE SERVICES LIMITED, AEGIS DEFENSE SERVICES, LLC, KHADIM ALKANANI (Attachments: # 1 Attachment A, # 2 Text of Proposed Order)(Handzo, David) (Entered: 02/03/2010) |
| 02/05/2010 | | MINUTE ORDER by Magistrate Judge Deborah A. Robinson on 2/5/10: granting 19 Motion. (lcdar3) (Entered: 02/05/2010) |
| 02/09/2010 | 20 | VACATED PURSUANT TO MUNUTE ORDER FILED ON 02/24/2010.....ORDER granting defendant Aegis UK's motion 16 to dismiss for lack of personal jurisdiction. Signed by Judge Richard W. Roberts on 2/8/10. (lcrwr2) Modified on 3/4/2010 (zjf, ). (Entered: 02/09/2010) |
| 02/09/2010 | 21 | VACATED PURSUANT TO MINUTE ORDER FILED 02/24/2010.....MEMORANDUM ORDER granting defendant Aegis Defense Services LLC's motion 12 for summary judgment. Signed by Judge Richard W. Roberts on 2/8/10. (lcrwr2) Modified on 3/4/2010 (zjf, ). (Entered: 02/09/2010) |
| 02/09/2010 | 22 | Emergency MOTION Withdrawal of Orders granting Defendants Motion for Summary Judgment re 20 Order on Motion to Dismiss/Lack of Jurisdiction, 21 Order on Motion for Summary Judgment by KHADIM ALKANANI |

| | | |
|---|---|---|
| | | (Attachments: #_1 Exhibit A – Correspondence, #_2 Exhibit B – Interrogatory answers, #_3 Exhibit C – Joint Protective Order, #_4 Exhibit D – February 9, 2010 email, #_5 Exhibit E – Proposed Order)(Akeel, Shereef) (Entered: 02/09/2010) |
| 02/10/2010 | 23 | SUPPLEMENTAL MEMORANDUM to re 22 Emergency MOTION Withdrawal of Orders granting Defendants Motion for Summary Judgment re 20 Order on Motion to Dismiss/Lack of Jurisdiction, 21 Order on Motion for Summary JudgmentEmergency MOTION Withdrawal of Orders granting Defendants Motion for Summary Judgment re 20 Order on Motion to Dismiss/Lack of Jurisdiction, 21 Order on Motion for Summary Judgment filed by KHADIM ALKANANI. (Akeel, Shereef) (Entered: 02/10/2010) |
| 02/15/2010 | 24 | Memorandum in opposition to re 16 MOTION to Dismiss for Lack of Jurisdiction filed by KHADIM ALKANANI. (Attachments: #_1 Appendix Table of Exhibits, #_2 Exhibit A – Aegis LLC Registrations, #_3 Exhibit B – Aegis, Inc., Regostrations, #_4 Exhibit C – Interrogatories and Answers, #_5 Exhibit D – Joint Protective Order, #_6 Exhibit E – Emails, #_7 Exhibit F – Kristi Clemons data)(Akeel, Shereef) (Entered: 02/15/2010) |
| 02/15/2010 | 25 | Memorandum in opposition to re 12 MOTION for Summary Judgment *And Statement Of Points And Authorities In Support* filed by KHADIM ALKANANI. (Attachments: #_1 Exhibit A – 2004 Aegis Lawsuit, #_2 Exhibit B – Interrogatories and Answers, #_3 Exhibit C – Rule 56(f) affidavit of Shereef Akeel, #_4 Exhibit D – First Request to Produce)(Akeel, Shereef) (Entered: 02/15/2010) |
| 02/24/2010 | | MINUTE ORDER: It is hereby ORDERED that plaintiff's motion 22 to withdraw the Orders granting defendant Aegis LLC's motion for summary judgment and defendant Aegis UK's motion to dismiss for lack of personal jurisdiction be, and hereby is, GRANTED. Both Orders signed on February 9, 2010 are VACATED. Signed by Judge Richard W. Roberts on 2/24/10. (lcrwr2) (Entered: 02/24/2010) |
| 03/01/2010 | 27 | Joint MOTION To Modify Discovery and Briefing Schedule by AEGIS DEFENCE SERVICES LIMITED, AEGIS DEFENSE SERVICES, LLC, KHADIM ALKANANI (Attachments: #_1 Text of Proposed Order)(Handzo, David) (Entered: 03/01/2010) |
| 03/12/2010 | | MINUTE ORDER: It is hereby ORDERED that the parties' joint motion to modify the discovery and briefing schedule be, and hereby is, GRANTED. Discovery pertaining to defendants' dispositive motions shall close by March 22, 2010; plaintiff's oppositions are due by April 12, 2010; and defendants' replies are due by April 22, 2010. Signed by Judge Richard W. Roberts on 3/12/10. (lcrwr2) (Entered: 03/12/2010) |
| 03/15/2010 | | Set Deadlines: Discovery due by 3/22/2010, Plaintiff's Response due by 4/12/2010, Defendant's Replies due by 4/22/2010. (hs) (Entered: 03/15/2010) |
| 04/12/2010 | 28 | NOTICE *Regarding Filing of Sealed Material – Supplemental Brief* by KHADIM ALKANANI re 25 Memorandum in Opposition, (Akeel, Shereef) (Entered: 04/12/2010) |
| 04/12/2010 | 29 | SEALED DOCUMENT re 28 Notice (Other) filed by KHADIM ALKANANI. (This document is SEALED and only available to authorized |

persons.)(Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4)(zdr) (Entered: 04/12/2010)

| | | |
|---|---|---|
| 04/22/2010 | 30 | REPLY to opposition to motion re 12 MOTION for Summary Judgment *And Statement Of Points And Authorities In Support* filed by AEGIS DEFENSE SERVICES, LLC. (Handzo, David) (Entered: 04/22/2010) |
| 04/23/2010 | 31 | Unopposed MOTION for Leave to File *SEALED REPLY BRIEF ONE DAY AFTER THE DEADLINE* by AEGIS DEFENCE SERVICES LIMITED (Handzo, David) (Entered: 04/23/2010) |
| 04/23/2010 | 32 | NOTICE *OF FILING OF SEALED MATERIAL IN AEGIS DEFENCE SERVICES LIMITED'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS* by AEGIS DEFENCE SERVICES LIMITED (Handzo, David) (Entered: 04/23/2010) |
| 04/26/2010 | | MINUTE ORDER: It is hereby ORDERED that defendant's unopposed motion 31 for leave to file its sealed reply brief one day after the deadline be, and hereby is, GRANTED. Signed by Judge Richard W. Roberts on 4/26/10. (lcrwr2) (Entered: 04/26/2010) |
| 04/26/2010 | 33 | SEALED REPLY BRIEF IN SUPPORT OF 16 MOTION to Dismiss for Lack of Jurisdiction filed by AEGIS DEFENCE SERVICES LIMITED. (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(jf, ) (Entered: 05/19/2010) |
| 08/03/2010 | 34 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Matthew E. Price, :Firm– Jenner &Block, :Address– 1099 New York Avenue, NW Suite 900. Phone No. – (202) 639–6873. Fax No. – (202) 661–4802 by AEGIS DEFENCE SERVICES LIMITED, AEGIS DEFENSE SERVICES, LLC (Attachments: # 1 Declaration of Matthew E. Price, # 2 Proposed Order)(Handzo, David) (Entered: 08/03/2010) |
| 08/04/2010 | 35 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Matthew E. Price, :Firm– Jenner &Block, :Address– 1099 New York Avenue, NW Suite 900, Washington, DC 20001–4412. Phone No. – (202) 639–6873. Fax No. – (202) 661–4802 by AEGIS DEFENCE SERVICES LIMITED, AEGIS DEFENSE SERVICES, LLC (Attachments: # 1 Declaration of Matthew E. Price, # 2 Proposed Order)(Handzo, David) (Entered: 08/04/2010) |
| 08/05/2010 | | MINUTE ORDER: It is hereby ORDERED that defendants' motion 35 to admit Matthew E. Price pro hac vice be, and hereby is, GRANTED. Signed by Judge Richard W. Roberts on 8/5/10. (lcrwr2) (Entered: 08/05/2010) |
| 08/05/2010 | 36 | NOTICE of Appearance by Matthew E. Price on behalf of AEGIS DEFENCE SERVICES LIMITED, AEGIS DEFENSE SERVICES, LLC (Price, Matthew) (Entered: 08/05/2010) |
| 08/06/2010 | | Minute Entry; for proceedings held before Judge Richard W. Roberts: Status Conference held on 8/6/2010. Dispositive Motions Deadline suspended by the court. (Court Reporter Scott L. Wallace.) (hs) (Entered: 08/06/2010) |
| 11/30/2011 | 37 | ORDER denying without prejudice defendant Aegis LLC's and defendant Aegis UK's respective motions [12, 16] for summary judgment and to dismiss, and REFERRING the plaintiff's complaints as to the defendants' declination to produce certain discovery materials, treated as a motion to |

| | | |
|---|---|---|
| | | compel, to a magistrate judge for resolution. The plaintiff shall file either a memorandum or status report by December 21, 2011. The defendants shall have until January 11, 2012 to respond. Signed by Judge Richard W. Roberts on 11/30/11. (lcrwr2) (Entered: 11/30/2011) |
| 12/01/2011 | | Set/Reset Deadlines: Plaintiff's Memorandum/Status Report due by 12/21/2011; Defendant's Response due by 1/11/2012 (hs) (Entered: 12/01/2011) |
| 12/21/2011 | 38 | SUPPLEMENTAL MEMORANDUM to re 37 Order on Motion to Dismiss/Lack of Jurisdiction,, filed by KHADIM ALKANANI. (Attachments: # 1 Errata Index of Exhibits, # 2 Exhibit A – Order, # 3 Exhibit B – Email with Supplemental Brief, # 4 Exhibit C – Aegis Responses)(Akeel, Shereef) (Entered: 12/21/2011) |
| 12/21/2011 | 42 | MOTION to Compel by KHADIM ALKANANI (See docket entry 38 to view document.) (ztnr, ) (Entered: 08/20/2012) |
| 01/10/2012 | 39 | RESPONSE re 38 Supplemental Memorandum, */ Memorandum in Opposition to Plaintiff's Supplemental Memorandum in Support of Discovery Allegations as Requested by the Court* filed by AEGIS DEFENCE SERVICES LIMITED, AEGIS DEFENSE SERVICES, LLC. (Handzo, David) (Entered: 01/10/2012) |
| 02/01/2012 | 40 | STATUS REPORT *(Joint)* by AEGIS DEFENCE SERVICES LIMITED, AEGIS DEFENSE SERVICES, LLC, KHADIM ALKANANI. (Handzo, David) (Entered: 02/01/2012) |
| 05/31/2012 | 41 | CASE REFERRED to Magistrate Judge Alan Kay nunc pro tunc to 11/30/2011 for resolution of motion to compel. (kb) (Entered: 05/31/2012) |
| 07/23/2012 | | Minute Entry: Hearing on the Supplemental Briefings regarding Plaintiff's Motion to Compel set for 8/2/2012 at 10:00 am in Courtroom 7 before Magistrate Judge Alan Kay. (lcak1) (Entered: 07/23/2012) |
| 08/02/2012 | | Minute Entry for proceedings held before Magistrate Judge Alan Kay on 8/2/12 : Plaintiff's Motion to Compel heard and argued. Report and Recommendation to be submitted to Judge Roberts. (Court Reporter : Bowles Reporting Service – Ctrm. 7.) (kk) (Entered: 08/02/2012) |
| 08/20/2012 | 43 | ORDER granting in part and denying in part 42 Motion to Compel. Signed by Magistrate Judge Alan Kay on 08/20/2012. (lcak1) (Entered: 08/20/2012) |
| 08/20/2012 | 44 | MEMORANDUM AND OPINION re: Motion to Compel. Signed by Magistrate Judge Alan Kay on 08/20/2012. (lcak1) (Entered: 08/20/2012) |
| 08/31/2012 | | MINUTE ORDER: It is hereby ORDERED that the parties file by September 13, 2012 a joint status report and proposed order reflecting the schedule upon which this case should proceed. Signed by Judge Richard W. Roberts on 8/31/2012. (lcrwr2) (Entered: 08/31/2012) |
| 09/04/2012 | | Set/Reset Deadlines: Joint Status Report due by 9/13/2012. (hs) (Entered: 09/04/2012) |
| 09/13/2012 | 45 | STATUS REPORT *(JOINT)* by AEGIS DEFENCE SERVICES LIMITED, AEGIS DEFENSE SERVICES, LLC. (Attachments: # 1 Text of Proposed Order)(Handzo, David) (Entered: 09/13/2012) |

| | | |
|---|---|---|
| 09/17/2012 | 46 | CASE DIRECTLY REFERRED to Magistrate Judge Alan Kay for resolution. Within 30 days of the magistrate judge's rulings on the foregoing motions, if the case has not been dismissed in its entirety, the parties shall meet and confer and submit to the court a schedule to govern any further proceedings. (ls, ) (Entered: 09/18/2012) |
| 09/18/2012 | | MINUTE ORDER: In line with the parties' joint status report 45 , it is hereby ORDERED that the defendants comply with Magistrate Judge Kay's order 43 and produce the category of documents as directed by September 30, 2012. It is further ORDERED that defendant Aegis UK file its motion to dismiss for lack of personal jurisdiction and defendant Aegis LLC file its motion for summary judgment by October 22, 2012. Plaintiff Alkanani shall have until November 26, 2012 to file an opposition. The defendants shall have until December 10, 2012 to file a reply. The defendants' foregoing motions shall be REFERRED to Magistrate Judge Kay for resolution. Within 30 days of the magistrate judge's rulings on the foregoing motions, if the case has not been dismissed in its entirety, the parties shall meet and confer and submit to the court a schedule to govern any further proceedings. Signed by Judge Richard W. Roberts on 9/18/12. (lcrwr2) (Entered: 09/18/2012) |
| 09/18/2012 | | Set/Reset Deadlines: Motions due by 10/22/2012. Summary Judgment motions due by 10/22/2012. Response to Motion for Summary Judgment due by 11/26/2012. Reply to Motion for Summary Judgment due by 12/10/2012. (hs) (Entered: 09/18/2012) |
| 10/22/2012 | 47 | MOTION for Summary Judgment by AEGIS DEFENSE SERVICES, LLC (Attachments: # 1 Declaration of Kristi Clemens, # 2 Exhibit A to Declaration of Kristi Clemens, # 3 Exhibit B to Declaration of Kristi Clemens, # 4 Proposed Order)(Handzo, David) (Entered: 10/22/2012) |
| 10/22/2012 | 48 | MOTION to Dismiss for Lack of Jurisdiction by AEGIS DEFENCE SERVICES LIMITED (Attachments: # 1 Declaration of Jeffrey Day, # 2 Declaration of Sylvia White, # 3 Exhibit A to Declaration of Sylvia White (filed under seal), # 4 Exhibit B to Declaration of Sylvia White (filed under seal), # 5 Exhibit C to Declaration of Sylvia White, # 6 Proposed Order)(Handzo, David) (Additional attachment(s) added on 10/23/2012: # 7 Exhibit A to Declaration of Sylvia White, # 8 Exhibit B to Declaration of Sylvia White) (jf, ). (Entered: 10/22/2012) |
| 10/22/2012 | 49 | NOTICE *of Filing of Sealed Material in Support of Defendant Aegis Defence Services Litimted's Motion to Dismiss* by AEGIS DEFENCE SERVICES LIMITED re 48 MOTION to Dismiss for Lack of Jurisdiction (Handzo, David) (Entered: 10/22/2012) |
| 11/26/2012 | 50 | RESPONSE re 47 MOTION for Summary Judgment filed by KHADIM ALKANANI. (Attachments: # 1 Exhibit A– Discovery Documents from Aegis Bates 228–231, # 2 Exhibit B – Confidential and Sealed, # 3 Exhibit C – Aegis LLC Complaint for Trademark, # 4 Exhibit D – Affidavit of Shereef Akeel, # 5 Exhibit E – Confidential and Sealed)(Akeel, Shereef) (Entered: 11/26/2012) |
| 11/26/2012 | 51 | NOTICE *of Filing Sealed Materials in Plaintiff's Memorandum* by KHADIM ALKANANI re 50 Response to motion, (Akeel, Shereef) (Additional attachment(s) added on 11/29/2012: # 1 Response, # 2 Table of Exhibits, # 3 |

| | | |
|---|---|---|
| | | Exhibit A, #4 Exhibit B, #5 Exhibit C, #6 Exhibit D, #7 Exhibit E)(jf,). (Entered: 11/26/2012) |
| 11/26/2012 | 52 | RESPONSE re 48 MOTION to Dismiss for Lack of Jurisdiction filed by KHADIM ALKANANI. (Attachments: #1 Exhibit A – Confidential and Sealed, #2 Exhibit B – Confidential and Sealed, #3 Exhibit C – Aegis LLC Registrations, #4 Exhibit E – Aegis Inc Registrations)(Akeel, Shereef) (Entered: 11/26/2012) |
| 11/26/2012 | 53 | NOTICE *of Filing Redacted Docments Sealed Materials in Plaintiff's Memorandum* by KHADIM ALKANANI re 52 Response to motion, (Akeel, Shereef) (Additional attachment(s) added on 11/29/2012: #1 Response, #2 Table of Exhibits, #3 Exhibit A, #4 Exhibit B, #5 Exhibit C, #6 Exhibit D) (jf, ). (Entered: 11/26/2012) |
| 11/28/2012 | 54 | Unopposed MOTION for Extension of Time to File Response/Reply as to 47 MOTION for Summary Judgment , 48 MOTION to Dismiss for Lack of Jurisdiction by AEGIS DEFENCE SERVICES LIMITED, AEGIS DEFENSE SERVICES, LLC (Attachments: #1 Proposed Order)(Handzo, David) (Entered: 11/28/2012) |
| 11/29/2012 | 55 | ORDER granting 54 Unopposed Motion for Extension of Time to File Response/Reply re 47 MOTION for Summary Judgment , 48 MOTION to Dismiss for Lack of Jurisdiction . Replies due by 12/19/2012. Signed by Magistrate Judge Alan Kay on 11/29/2012. (lcak1) (Entered: 11/29/2012) |
| 11/29/2012 | 56 | ERRATA – *Errata Regarding Notices Filing of Sealed Materials (dkt 51 and 53)* by KHADIM ALKANANI 53 Notice (Other), filed by KHADIM ALKANANI, 51 Notice (Other), filed by KHADIM ALKANANI. (Akeel, Shereef) (Entered: 11/29/2012) |
| 12/19/2012 | 57 | REPLY to opposition to motion re 48 MOTION to Dismiss for Lack of Jurisdiction filed by AEGIS DEFENCE SERVICES LIMITED. (Attachments: #1 Exhibit A – Supplemental Declaration of Jeffrey Day)(Handzo, David) (Entered: 12/19/2012) |
| 12/19/2012 | 58 | REPLY to opposition to motion re 47 MOTION for Summary Judgment filed by AEGIS DEFENSE SERVICES, LLC. (Attachments: #1 Exhibit A – Supplemental Declaration of Jeffrey Day)(Handzo, David) (Entered: 12/19/2012) |
| 01/04/2013 | | MINUTE ORDER Motion Hearing set for 1/25/2013 at 11:00 AM in Courtroom 7 before Magistrate Judge Alan Kay on 47 Motion for Summary Judgment by Aegis Defense Services, LLC and 48 Motion to Dismiss for Lack of Jurisdiction by Aegis Defense Services Limited. Signed by Magistrate Judge Alan Kay on 01/04/2013. (lcak1) (Entered: 01/04/2013) |
| 01/25/2013 | | Minute Entry for proceedings held before Magistrate Judge Alan Kay on 1/25/13 : Defendants' Motions for Summary Judgment 47 and to Dismiss for Lack of Jurisdiction 48 , heard, argued and taken under advisement. (Court Reporter : Bowles Reporting Service – Ctrm. 7) (kk) (Entered: 01/28/2013) |
| 01/30/2013 | | MINUTE ORDER Telephone Conference set for 2/4/2013 at 4:30 PM before Magistrate Judge Alan Kay. Parties are to jointly contact chambers at 202.354.3030. Signed by Magistrate Judge Alan Kay on 1/30/2013. (lcak1) |

| | | | |
|---|---|---|---|
| 02/04/2013 | | | MINUTE ORDER Telephone Conference rescheduled by the Court for 2/7/2013 at 4:30 PM before Magistrate Judge Alan Kay. Parties are to jointly contact chambers at 202.354.3030. Signed by Magistrate Judge Alan Kay on 2/4/2013. (lcak1) (Entered: 02/04/2013) |
| 02/04/2013 | 59 | | SUPPLEMENTAL MEMORANDUM to re 52 Response to motion, filed by KHADIM ALKANANI. (Attachments: # 1 Exhibit Exhibits 1 and 2)(Akeel, Shereef) (Entered: 02/04/2013) |
| 02/07/2013 | 60 | | REPLY re 59 Supplemental Memorandum filed by AEGIS DEFENCE SERVICES LIMITED. (Attachments: # 1 Exhibit A – Second Supplemental Declaration of Jeffrey Day)(Handzo, David) (Entered: 02/07/2013) |
| 02/07/2013 | | | MINUTE ORDER In light of the parties' recent supplemental filings, the Telephone Conference for 2/7/2013 at 4.30 pm is canceled. Signed by Magistrate Judge Alan Kay 2/7/2013. (lcak1) (Entered: 02/07/2013) |
| 04/05/2013 | | | Case directly reassigned to Judge Ketanji Brown Jackson. Judge Richard W. Roberts no longer assigned to the case. (gt, ) (Entered: 04/05/2013) |
| 08/07/2013 | 61 | | REPORT AND RECOMMENDATION re 47 MOTION for Summary Judgment filed by AEGIS DEFENSE SERVICES, LLC. Signed by Magistrate Judge Alan Kay on 8/7/2013. (lcak1) (Entered: 08/07/2013) |
| 08/07/2013 | 62 | | REPORT AND RECOMMENDATION re 48 MOTION to Dismiss for Lack of Jurisdiction filed by AEGIS DEFENCE SERVICES LIMITED. Signed by Magistrate Judge Alan Kay on 8/7/2013. (lcak1) (Entered: 08/07/2013) |
| 08/21/2013 | 63 | | OBJECTION to 62 Report and Recommendations *of Magistrate* filed by KHADIM ALKANANI. (Akeel, Shereef) (Entered: 08/21/2013) |
| 09/04/2013 | 64 | | RESPONSE re 63 Objection to Report and Recommendations filed by AEGIS DEFENCE SERVICES LIMITED. (Handzo, David) (Entered: 09/04/2013) |
| 09/16/2013 | 65 | | MEMORANDUM OPINION AND ORDER ADOPTING 61 REPORT AND RECOMMENDATION. The 61 Report and Recommendation is hereby ADOPTED. Accordingly, Defendant Aegis LLC's 47 Motion for Summary Judgment is GRANTED. Signed by Judge Ketanji Brown Jackson on 9/16/2013. (lckbj3) (Entered: 09/16/2013) |
| 01/21/2014 | 66 | | NOTICE OF SUPPLEMENTAL AUTHORITY by AEGIS DEFENCE SERVICES LIMITED (Attachments: # 1 Slip Opinion – Daimler AG v. Bauman, No. 11–965)(Handzo, David) (Entered: 01/21/2014) |
| 01/28/2014 | 67 | | RESPONSE re 66 NOTICE OF SUPPLEMENTAL AUTHORITY filed by KHADIM ALKANANI. (Akeel, Shereef) (Entered: 01/28/2014) |
| 01/29/2014 | | | NOTICE OF ERROR re 67 Response to Document; emailed to shereef@akeelvalentine.com, cc'd 5 associated attorneys –– The PDF file you docketed contained errors: 1. FYI–TO ALL COUNSEL; PLEASE REVIEW LCvR5.1 (b) CORRESPONDENCE WITH COURT (jf, ) (Entered: 01/29/2014) |
| 03/26/2014 | 68 | 54 | |

| | | | |
|---|---|---|---|
| | | | ORDER granting 48 Motion to Dismiss for Lack of Personal Jurisdiction. See attached order for details. Signed by Judge Ketanji Brown Jackson on 3/26/2014. (lckbj3) (Entered: 03/26/2014) |
| 03/26/2014 | 69 | 15 | MEMORANDUM OPINION granting 48 Motion to Dismiss for Lack of Personal Jurisdiction. Signed by Judge Ketanji Brown Jackson on 3/26/2014. (lckbj3) (Entered: 03/26/2014) |
| 04/24/2014 | 70 | 12 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 68 Order on Motion to Dismiss/Lack of Jurisdiction by KHADIM ALKANANI. Filing fee $ 505, receipt number 0090–3694955. Fee Status: Fee Paid. Parties have been notified. (Akeel, Shereef) (Entered: 04/24/2014) |

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| KHADIM ALKANANI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 09-CV-1607 |
| ) | Hon. Ketanji Brown Jackson |
| AEGIS DEFENSE SERVICES, LLC, ) | |
| and AEGIS DEFENSE SERVICES ) | |
| LIMITED, ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |

## PLAINTIFF'S NOTICE OF APPEAL

Notice is hereby given that Plaintiff KHADIM ALKANANI, by his undersigned counsel, hereby appeals to the United States Court of Appeals for the District of Columbia Circuit from the District Court's Order [ECF No. 68] granting Defendant's motion to dismiss for lack of personal jurisdiction [ECF No. 48] and dismissing Plaintiff's case with prejudice in its entirety, and which was entered in this action on March 26, 2014.

1

Respectfully Submitted,

By: /s/ Shereef H. Akeel
     Shereef H. Akeel (DC – MI0042)
     Akeel Valentine, PLC
     Counsel for Plaintiff
     888 W. Big Beaver, 910
     Troy, MI 48084
     Telephone: (248) 269-9595
     Facsimile: (248) 269-9119
     Email: shereef@akeelvalentine.com

Date: April 24, 2014

Alkanani Notice of Appeal.G:\A_B\Alkanani, K\Pleadings\Notice of Appeal\Alkanani Notice of Appeal.doc

2

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| KHADIM ALKANANI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 09-CV-1607 |
| ) | Hon. Ketanji Brown Jackson |
| AEGIS DEFENSE SERVICES, LLC, ) | |
| and AEGIS DEFENSE SERVICES ) | |
| LIMITED, ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on April 24, 2014, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel of record on the ECF Service List.

By:    /s/ Shereef H. Akeel
       Shereef H. Akeel (DC – MI0042)
       Akeel Valentine, PLC
       Counsel for Plaintiff
       888 W. Big Beaver, 910
       Troy, MI 48084
       Telephone: (248) 269-9595
       Facsimile: (248) 269-9119
       Email: shereef@akeelvalentine.com

3

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

)
KHADIM ALKANANI,                    )
                                    )
            Plaintiff,              )
                                    )
      v.                            )    Civil Action No. 09-CV-1607 (KBJ)(AK)
                                    )
AEGIS DEFENSE SERVICES, LLC,        )
and AEGIS DEFENCE SERVICES          )
LIMITED,                            )
                                    )
            Defendants.             )
                                    )
_____ )

## MEMORANDUM OPINION

Plaintiff Khadim Alkanani ("Alkanani" or "Plaintiff"), a former United States

soldier, filed the instant tort action after an employee of a private defense contractor

shot him in the foot in Iraq.  That defense contractor, Defendant Aegis Defence

Services Limited ("Aegis UK"), filed a motion to dismiss the complaint, contending

that this Court need not reach the merits of Alkanani's claims because the court lacks

personal jurisdiction over the company.  (Def.'s Mot. to Dismiss for Lack of

Jurisdiction ("Def.'s Mot."), ECF No. 48, at 1.)  On August 7, 2013, Magistrate Judge

Alan Kay filed a Report and Recommendation that concludes that this case should be

dismissed for lack of personal jurisdiction over Aegis UK.  (ECF No. 62, at 1.)[1]

Plaintiff has filed objections to that report (Pl.'s Mem. of P&A in Resp. to Magistrate's

Report and Recommendation, ("Pl.'s Objections"), ECF No. 63), and those objections

---

[1] Page numbers throughout this opinion refer to the page numbers generated by the Court's electronic filing system.

1

are now before this Court. Because this Court concurs with Magistrate Judge Kay's conclusions that it cannot exercise either specific or general personal jurisdiction over Aegis UK, the Court will overrule Alkanani's objections and adopt Magistrate Judge Kay's Report and Recommendation. Consequently, Aegis UK's motion to dismiss for lack of personal jurisdiction is **GRANTED**, and this case is **DISMISSED** with prejudice. A separate order consistent with this opinion will follow.

## I.    BACKGROUND

### A.    Facts

The parties do not dispute the facts giving rise to Alkanani's allegations. On June 4, 2005, Alkanani, while on active duty as a U.S. soldier in Iraq, was a part of a vehicle convoy returning from an intelligence mission in the field to a U.S. military facility in Baghdad. (Compl., ECF No.1, ¶¶ 3-9.) Aegis UK, a private defense contractor, employed security guards to protect that facility. (Decl. of Jeffrey Day ("Day Decl."), ECF No. 48-1, ¶¶ 7-8.) As Alkanani approached a guarded checkpoint near the facility's main gate, at least one Aegis UK security guard overseeing the facility opened fire on Alkanani's vehicle. (*See* Compl. ¶¶ 11-13 (alleging that three Aegis UK security guards shot at the vehicle); Def.'s Mot. at 8 (maintaining that a single Aegis UK security guard shot at the vehicle).) One bullet hit Alkanani in the foot, rendering him permanently disabled. (Compl. ¶¶ 14-17; Def.'s Mot. at 8.)

After sustaining that injury, Alkanani brought suit against two defendants: Aegis UK and Aegis Defense Services, LLC ("Aegis LLC"). Aegis UK is a private defense contractor headquartered in London, England, and incorporated under the laws of England and Wales. (Day Decl. ¶ 1.) Aegis LLC—a company that recruits and runs

2

background checks on Americans for Aegis UK to hire (Second Supp. Day Decl. ¶ 4)—

is a nearly wholly-owned subsidiary of Aegis UK that is headquartered in the state of

Virginia. (*Id.* ¶ 24; Second Supp. Decl. of Jeffrey Day ("Second Supp. Day Decl."),

ECF No. 60-1, ¶ 5.) At this stage of the litigation, the events surrounding the accident

and the extent of Alkanani's injury are not at issue. Rather, the question before this

Court pertains to whether the Court has personal jurisdiction over Aegis UK, which

depends in large part on the extent of the defendant's business activity in the District of

Columbia, as described in further detail below.

    With respect to nature and scope of Aegis UK's business, the record evidence

demonstrates that Aegis UK security guards were stationed in Baghdad to provide

security-management and protective services to entities involved in reconstruction

efforts in Iraq pursuant to a contract that the U.S. Department of the Army—a sub-

division of the Department of Defense—had awarded to Aegis UK. (*See* Day Decl. ¶¶

6-8 (referencing Contract No. W911SO-04-S-003 (the "Contract")).) Further, the

parties negotiated and executed the Contract outside of the District of Columbia: Aegis

UK negotiated the Contract with government officials located in Virginia, and the

company signed the Contract in the United Kingdom. (*Id.* ¶ 8.) It is also beyond

dispute that Aegis UK does not maintain an office, base employees, or keep a bank

account in the District of Columbia. (*Id.* ¶¶ 10-16, 23, 31-32.) Moreover, although

Aegis UK owns approximately 99% of Virginia-based subsidiary Aegis LLC (Day Decl.

¶ 38), Aegis LLC manages its operations almost entirely separate from Aegis UK. (Day

Decl. ¶¶ 26, 29-32.) The undisputed record evidence indicates that the two companies

3

share two board members, but they do not share offices or business locations, and they maintain separate payrolls.  (*Id.* ¶¶ 23, 28, 30-32.)

### B.  Procedural Background

Alkanani filed the instant complaint on August 24, 2009, and served the complaint on Aegis UK by having it delivered to the company's offices in London. (*See* Return of Service/Aff., ECF No. 9.)  The five-count complaint alleges that Aegis UK and Aegis LLC are liable for:  (1) negligence, (2) negligence in hiring training and supervision, (3) intentional infliction of emotional distress, (4) negligent infliction of emotional distress, and (5) gross negligence.  (Compl. ¶¶ 54-71.)

In their required joint statement to the Court submitted under Federal Rule of Civil Procedure 16, both Defendants represented an intent to file a dispositive motion in this matter:  Aegis UK stated that it intended to seek dismissal for lack of personal jurisdiction, while Aegis LLC stated that it intended to file a motion for summary judgment on the grounds that it was an improper party.  (Joint Report to the Court Pursuant to Fed. R. Civ. P. 16.3(c), ECF No. 8, at 2.)  The Court permitted the parties to engage in limited discovery regarding these threshold issues.  (*See* Scheduling Order, ECF No. 10, ¶ 1 (allowing for discovery "limited to issues raised in" the "motions mentioned in" the parties' joint report).)  At the close of that limited discovery period, Aegis LLC filed a motion for summary judgment, contending that there is no basis for holding Aegis LLC liable for the tort of its parent company, Aegis UK (Aegis LLC's Mot. for Summ. J., ECF No. 47), and Aegis UK filed a motion to dismiss for lack of personal jurisdiction (*see* Def.'s Mot. at 1).

4

The Court referred both motions directly to Magistrate Judge Kay (ECF No. 46), who ultimately recommended that this Court grant both motions. (*See* Report and Recommendation; Report and Recommendation Regarding Summ. J., ECF No. 61.) Neither party objected to Magistrate Judge Kay's recommendation that the Court grant Aegis LLC's motion for summary judgment, and this Court adopted that recommendation, agreeing with Magistrate Judge Kay's conclusion that Alkanani had failed to establish that any theory—including alter ego theory, successor liability theory, or agency theory—supported Aegis LLC's legal liability for the acts of its parent company, Aegis UK. *Alkanani v. Aegis Def. Servs., LLC*, No. 09-CV-1607, 2013 WL 5203613, at \*1 (D.D.C. Sept. 16, 2013).

Alkanani did object, however, to Magistrate Judge Kay's recommendation that this Court grant Aegis UK's motion to dismiss for lack of personal jurisdiction. (*See* Pl.'s Objections at 5-6.) On September 4, 2013, Aegis UK filed a response to Alkanani's objection. (Def.'s Resp. to Pl.'s Objections, ECF No. 64.) In addition, on January 21, 2014, Aegis UK submitted a letter notifying this Court of the Supreme Court's recent decision on general jurisdiction in *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014), (*see* Def.'s Notice of Suppl. Auth., ECF No. 66), and Alkanani responded to that correspondence. (Pl.'s Resp. re Notice of Suppl. Auth., ECF No. 67.)[2] Thus, before this Court at present is Aegis UK's motion to dismiss for lack of personal jurisdiction, Magistrate Judge Kay's Report recommending that this Court dismiss the

---

[2] Notably, Defendant filed its notice of supplemental authority as a *letter*, and Alkanani responded in kind. (*See* Def.'s Notice of Suppl. Auth., ECF No. 66; Pl.'s Resp. re Notice of Suppl. Auth., ECF No. 67.) The Local Rules of this Court direct that "correspondence shall not be directed by the parties or their attorneys to a judge," unless the judge requests otherwise, LCvR. 5.1(b), which means that the parties' letters constitute a technical violation of the court's rules. This Court has considered both filings despite this procedural error.

5

case for lack of personal jurisdiction, Alkanani's objections to the magistrate judge's

report, Aegis UK's letter noting supplemental authority, and Alkanani's response to

Aegis UK's correspondence.

## II.    LEGAL FRAMEWORK

### A.  Motions To Dismiss For Lack Of Personal Jurisdiction Pursuant To Rule 12(b)(2)

Aegis UK seeks to dismiss this case pursuant to Federal Rule of Civil Procedure

12(b)(2) on the grounds that the court lacks personal jurisdiction over the company.

Rule 12(b)(2) specifically "authorizes a motion to dismiss based upon the traditional

defense that the court lacks jurisdiction over the defendant's person, which raises a

question as to whether the controversy or defendant has sufficient contact with the

forum to give the court the right to exercise judicial power over defendant." *Wiggins v.*

*Equifax Inc.*, 853 F. Supp. 500, 501 (D.D.C. 1994) (citation omitted).  The question

regarding whether a defendant has sufficient forum contacts "typically implicates a

[state's] jurisdictional statute or rule and also quite frequently the Due Process Clause

of the Constitution as well."  5B Charles A. Wright & Arthur R. Miller, Federal

Practice And Procedure § 1351, at 266 (3d ed. 2004).  Indeed, the Supreme Court

recently confirmed that "[f]ederal courts ordinarily follow state law in determining the

bounds of their jurisdiction over persons."  *Daimler*, 134 S.Ct. at 753 (citation

omitted)).

As relevant here, the District of Columbia has "long-arm" and service statutes

that speak to the exercise of personal jurisdiction over foreign individuals and entities.

*See* D.C. Code § 13-423 (long-arm statute); *id.* § 13-334 (service on foreign

6

corporations).  In short, D.C. law authorizes personal jurisdiction over foreign

corporations in two ways:

> a foreign corporation, acting directly or through an agent, is subject to
> personal jurisdiction in the District if, among other things, it has
> "transact[ed] any business" here.  D.C. Code § 13-423(a)(2001).
> When jurisdiction is based on this section, the claim for relief must
> "arise[ ] from" the acts conferring jurisdiction over the defendant.
> D.C. Code § 13-423(b).  This is sometimes referred to as specific
> jurisdiction.  In the alternative, D.C. Code § 13-334(a) may confer
> general jurisdiction over corporations "doing business" in the District
> of Columbia.

*Gonzalez v. Internacional De Elevadores, S.A.*, 891 A.2d 227, 232 (D.C. 2006)

(alterations in original).  As explained further below, specific jurisdiction requires a

nexus between a foreign corporation's particular contact with the forum state and the

claim that the plaintiff asserts.  *See Novak-Canzeri v. Saud*, 864 F. Supp. 203, 206

(D.D.C. 1994) (citation omitted).  General jurisdiction, on the other hand, permits the

plaintiff to bring any sort of claim against a foreign corporation in D.C.—"regardless of

whether [the defendant's] contacts gave rise to the claim in the particular case[,]"—so

long as the defendant has "sufficiently systematic and continuous contacts with the

forum state" such that it is fair for the forum's courts to entertain any claim against the

entity.  *Brooks v. Harris*, 808 F. Supp. 2d 206, 208 (D.D.C. 2011).  This means that, in

D.C. as elsewhere, there is a practical distinction between the exercise of personal

jurisdiction over a foreign corporation based on its "*doing* business when that term

signals local activity sufficient to support all-purpose (general) jurisdiction over a

defendant[,]" and the exercise of personal jurisdiction over a corporation that is

*transacting* business, [when] invoked as a basis for specific adjudicatory authority over

7

claims relating to the very business transacted[.]" *Crane v. Carr*, 814 F.2d 758, 763

(D.C. Cir. 1987) (emphasis added) (internal quotation marks and citation omitted).

With respect to constitutional requirements, an exercise of personal jurisdiction

is ordinarily considered to comply with Due Process if the defendant has sufficient

contacts with the forum such that exercising jurisdiction over the defendant would

comport with "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v.*

*Washington*, 326 U.S. 310, 316 (1945) (citation omitted); *see also Burger King Corp. v.*

*Rudzewicz*, 471 U.S. 462, 474 (1985) (explaining that due process requires "minimum

contacts"). District of Columbia courts have clarified that the Due Process Clause

presents no additional hurdle for a plaintiff who can demonstrate that the defendant

meets either the "transacting business" test of D.C. Code § 13-423(a)(1) or is "doing

business" in the District for the purpose of § 13-334(a). Thus, a D.C. court need only

engage in a single analysis of the defendant's contacts with the District of Columbia

under the standards established in the long-arm and service statutes because sufficient

contacts under the D.C. Code and proper service is all that Due Process requires. *See*

*Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 513 (D.C. Cir. 2002); *Shoppers*

*Food Warehouse v. Moreno*, 746 A.2d 320, 329-30 (D.C. 2000).

When personal jurisdiction is challenged, the plaintiff must demonstrate that

each defendant is subject to personal jurisdiction in the forum. *See Crane v. N.Y.*

*Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990) (citation omitted). The plaintiff

bears the "burden of establishing a factual basis for the [Court's] exercise of personal

jurisdiction over the defendant[,]" *Shibeshi v. United States*, 932 F. Supp. 2d 1, 2

(D.D.C. 2013) (alteration in original) (quoting *Crane*, 894 F.2d at 456), and to meet that

8

burden, the plaintiff "must allege specific facts connecting [the] defendant with the

forum[.]" *Second Amendment Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 524

(D.C. Cir. 2001) (first alteration in original) (citation omitted).  If the plaintiff contends

that the court has specific jurisdiction—*i.e.*, that his claim arises from a specific contact

that the defendant had with the forum—plaintiff must allege facts demonstrating that

the nonresident defendant had contact with the forum and that that contact bears a

"discernable relationship" to the plaintiff's claim.  *Shoppers Food Warehouse*, 746

A.2d at 333.  Alternatively, where general jurisdiction is alleged, the plaintiff must

demonstrate that the defendant "purposefully avail[ed] itself of the privilege of

conducting activities with the forum state, thus invoking the benefits and protections of

its laws."  *Burger King*, 471 U.S. at 475.

Where, as here, the parties have engaged in jurisdictional discovery, the

plaintiff's burden is to prove the existence of personal jurisdiction by the

preponderance of the evidence.  *Shapiro, Lifschitz & Schram, P.C. v. Hazard*, 90 F.

Supp. 2d 15, 20 (D.D.C. 2000).  The court need not confine itself to the allegations in

the complaint as with other motions to dismiss; rather, it can consider materials outside

of the pleadings, including declarations and evidence produced during the course of

jurisdictional discovery.  *Frost v. Catholic Univ. of Am.*, 960 F. Supp. 2d 226, 231

(D.D.C. 2013) (citation omitted).  Moreover, the court need not treat all of the

plaintiff's allegations as true when deciding a personal jurisdiction question.  *Am.

Action Network, Inc. v. Cater Am., LLC*, No. 12-1972, 2013 WL 5428857, at *2 (D.D.C.

Sept. 30, 2013) ("Unlike a Rule 12(b)(6) motion to dismiss, the Court need not treat all

of a plaintiff's allegations as true when making a personal jurisdiction determination.").

9

But the court still must resolve any factual discrepancies in the plaintiff's favor. *Id*.

(citing *Crane*, 894 F.2d at 456).

## B. Standard Of Review Of A Magistrate Judge's Report And Recommendation

Under Local Civil Rule 72.3(a), district court judges can specifically request that

a magistrate judge prepare a report recommending findings of fact and a disposition

with respect to the case. *Id.*; *see also* 28 U.S.C. § 636(b)(1). District court judges may

choose to accept, reject, or modify the recommendations of the magistrate judge in

whole or in part. LCvR 72.3(c); 28 U.S.C. § 636(b)(1). The district court reviews any

objections the parties make to the magistrate judge's recommendations *de novo*. LCvR

72.3(c); *Houlahan v. Brown*, No. 11-1240, 2013 WL 5548839, at \*1 (D.D.C. Oct. 8,

2013) (citation omitted). "If, however, the party makes only conclusory or general

objections, or simply reiterates his original arguments, the Court reviews the Report and

Recommendation only for clear error." *Houlahan*, 2013 WL 5548839, at \*1 (citation

omitted).

## III. ANALYSIS

In this case, Alkanani has objected to the magistrate judge's findings and

conclusions regarding the lack of either specific or general personal jurisdiction over

Aegis UK, and this Court has conducted a *de novo* review of the matter. At issue is

whether Magistrate Judge Kay was correct to conclude (1) that specific jurisdiction

cannot be maintained because there was an insufficient nexus between Alkanani's

injuries and the contacts that Aegis UK had in the District of Columbia (*see* Report and

Recommendation at 8); (2) that general jurisdiction is not appropriate because Aegis

10

UK did not engage in enough activity in the District of Columbia to give rise to such jurisdiction (*see id.* at 5-6); and (3) that Coalition Provisional Authority Order 17—an order that the transitional government of Iraq issued shortly after the war in Iraq began —did not establish a basis for the exercise of personal jurisdiction over Aegis UK (*see id.* at 11).[3]  As explained further below, while Aegis UK did negotiate a contract with the U.S. Department of Defense pursuant to which Aegis UK employees were stationed in Iraq to provide security services at the base where Alkanani was shot, this Court cannot exercise specific jurisdiction over Aegis UK on that basis for several reasons: (1) there is no allegation that those contract negotiations took place in the District of Columbia; (2) even so, neither negotiations nor contracts with a federal government entity qualify as a contact in the District of Columbia for the purposes of specific jurisdiction; and (3) even if the Contract could qualify as a contact for the purpose of D.C.'s long-arm statute, Alkanani's tortious injury does not bear a close enough nexus to the Contract to give rise to specific jurisdiction.  Additionally, this Court agrees with Magistrate Judge Kay that it cannot exercise general jurisdiction over Aegis UK because Plaintiff's allegations regarding various contacts that Aegis UK has had in the District of Columbia (*e.g.*, meetings and negotiations with the U.S. government, its website, U.S. tax filings, and trips to D.C. to meet with non-government clients), even

---

[3] Magistrate Judge Kay also concluded that the manner in which Alkanani served Aegis UK violated D.C. law in a manner that precludes the exercise of general jurisdiction in any event.  (*See* Report and Recommendation at 6-7).  Because this Court concludes that Aegis UK's contacts with the District of Columbia are insufficient to establish that the company was "doing business" in the District of Columbia, it declines to reach the question of whether the statutory service requirements—which by their terms only apply when a company is "doing business" in the District—were satisfied.  *See* D.C. Code § 13-334; *see also, e.g.*, *Sweetgreen, Inc. v. Sweet Leaf, Inc.*, 882 F. Supp. 2d 1, 4 (D.D.C. 2012) (finding the defendant's contacts in D.C. insufficient for an exercise of general jurisdiction, and declining to discuss service); *The Urban Inst. v. FINCON Servs.*, 681 F. Supp. 2d 41, 46 (D.D.C. 2010) (same); *Exponential Biotherapies, Inc. v. Houthoff Buruma N.V.*, 638 F. Supp. 2d 1, 12 (D.D.C. 2009) (same); *Doe I v. State of Israel*, 400 F. Supp. 2d 86, 108 (D.D.C. 2005) (same).

11

if true, do not establish a sufficiently extensive presence in the forum to give rise to general jurisdiction. The Court also concludes that nothing in Coalition Provisional Order 17 independently confers jurisdiction over Aegis UK. Consequently, this Court agrees that it does not have personal jurisdiction over Aegis UK, as Magistrate Judge Kay found, and therefore the complaint must be dismissed.

### A. This Court Cannot Exercise Specific Jurisdiction Over Aegis UK

As noted above, "[a] plaintiff seeking to establish specific jurisdiction over a non-resident defendant must establish that specific jurisdiction comports with the forum's long-arm statute, D.C. Code § 13-423(a), and does not violate due process." *FC Inv. Grp. LC v. IFX Mkts., Ltd.*, 529 F.3d 1087, 1094-95 (D.C. Cir. 2008) (citing *GTE New Media Servs., Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000)).[4] Of the seven bases for specific jurisdiction that are set forth in the D.C. long-arm statute, only the "transacting business" requirement of section 13-423(a)(1) is applicable here, and, indeed, it is the only jurisdictional prong that Alkanani advances.

---

[4] Section 13-423(a) of the D.C. Code extends personal jurisdiction over a nonresident defendant where the plaintiff's claim arises from the defendant's

> (1) transacting any business in the District of Columbia;

> (2) contracting to supply services in the District of Columbia;

> (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;

> (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if [the defendant] regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia;

> (5) having an interest in, using, or possessing real property in the District of Columbia;

> (6) contracting to insure or act as surety for or on any person, property, or risk, contract, obligation, or agreement located, executed, or to be performed within the District of Columbia at the time of contracting, unless the parties otherwise provide in writing; or

> (7) marital or parent and child relationship in the District of Columbia[.]

(Pl.'s Objections at 18 ("Plaintiff has satisfied D.C. Code § 13-423(a)(1) because Aegis

UK admittedly 'transacted business' in the District of Columbia.").)  To meet the

requirements of personal jurisdiction under the "transacting business" prong of the D.C.

long-arm statute, a plaintiff must prove:

> First, that the defendant transacted business in the District of Columbia;
> second, that the claim arose from the business transacted in D.C.; and
> third, that the defendant had minimum contacts with the District of
> Columbia such that the Court's exercise of personal jurisdiction would not
> offend traditional notions of fair play and substantial justice.

*Brunson v. Kalil & Co.*, 404 F. Supp. 2d 221, 227 (D.D.C. 2005) (internal quotation

marks and citation omitted).  Because the reach of "transacting business" jurisdiction is

coextensive with the reach of constitutional due process, *see Helmer v. Doletskaya*, 393

F.3d 201, 205 (D.C. Cir. 2004); *Gonzalez*, 891 A.2d at 234, the first and third questions

are essentially the same.  Thus, the Court must answer two questions:  whether the

defendant has "transacted business," and whether the plaintiff's injury arises from that

business.

     Neither of these questions can be answered affirmatively in this case.

### 1. Was The Negotiation Of The Iraq Security Services Contract A Business Transaction In The District of Columbia?

     Alkanani maintains that his injury arose from the Contract between Aegis UK

and the Army because the Contract established Aegis UK's presence in Iraq and that the

negotiation and execution of that Contract provides a basis for the exercise of personal

jurisdiction over Aegis UK.  (Pl.'s Objections at 26-27.)  It is well established that the

"negotiation, formation, and performance of contracts constitute a business transaction

under § 13-423(a)(1)."  *Brunson*, 404 F. Supp. 2d at 230 (D.D.C. 2005) (citing *Helmer*,

393 F.3d at 205, and *Ulico Cas. Co. v. Fleet Nat'l Bank*, 257 F. Supp. 2d 142, 146

13

(D.D.C. 2003)); *see also Mouzavires v. Baxter*, 434 A.2d 988, 992 (D.C. 1981) ("It is

now well-settled that the 'transacting any business' provision embraces [certain]

contractual activities of a nonresident defendant[.]" (citation omitted)).  But the

Contract between Aegis UK and the Department of Defense cannot be the basis for the

exercise of personal jurisdiction in this case because it is equally well established that

contract negotiations *with the federal government* are excluded from the jurisdictional

analysis.  Moreover, even if the Contract did count as a relevant business transaction,

there is no allegation or evidence that that the parties here negotiated or executed the

Contract in the District of Columbia.

        With respect to the first point, while contract negotiations ordinarily constitute

business transactions upon which personal jurisdiction may be based for the purpose of

D.C.'s long-arm statute, there is a settled "government contacts" exception to this

general rule.  Under the government contacts exception, a nonresident's entry into the

District of Columbia for "the purpose of contacting federal governmental agencies

cannot serve as a basis for personal jurisdiction."  *Savage v. Bioport, Inc.*, 460 F. Supp.

2d 55, 62 (D.D.C. 2006) (quoting *Freiman v. Lazur*, 925 F. Supp. 14, 24 (D.D.C.

1996)); *United States v. Ferrara*, 54 F.3d 825, 831 (D.C. Cir. 1995) (noting that the

government contacts exception provides that contacts with federal agencies within the

District of Columbia "will not give rise to personal jurisdiction"); *Brunson*, 404 F.

Supp. 2d at 235 (same); *Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp. 2d 34, 44

(D.D.C. 2003) (same).  Indeed, "D.C. Courts have long carved out a 'government

contacts' exception" that applies when non-resident corporations "keep an office in the

District for the purpose of maintaining contact with Congress and governmental

14

agencies." *Sierra Club v. Tenn. Valley Auth.*, 905 F. Supp. 2d 356, 362 (D.D.C. 2012)

(collecting cases). Under the government contacts exception, any non-resident

defendant's contacts with the government are essentially excluded from "the

jurisdictional calculus." *Savage*, 460 F. Supp. 2d at 62 (holding that, under the

government contacts exception, defendant's contacts with the Department of Defense

are excluded from the personal jurisdiction analysis); *Naartex Consulting Corp. v. Watt*,

722 F.2d 779, 786-87 (D.C. Cir. 1983) (same with respect to the Department of the

Interior); *Freiman*, 925 F. Supp. at 24 (same with respect to the U.S. Copyright Office).

Because it is the practice of this Circuit to discount contacts with the federal

government when determining whether a non-resident defendant's contacts provide a

basis for the exercise of personal jurisdiction in D.C., the Court agrees with Magistrate

Judge Kay that the Contract for security services that Aegis UK negotiated with the

Department of Defense cannot serve as a "business transaction" upon which specific

jurisdiction may be predicated.

Significantly, even if the government contacts exception did not apply to exclude

the Contract at issue here from the Court's assessment of specific personal jurisdiction,

the Contract still could not serve as the required "business transaction" for § 13-

423(a)(1) purposes because there is no allegation or evidence that the Contract was

negotiated or executed in the District of Columbia. The principal location of the

Department of Defense is unquestionably Arlington, Virginia—which makes the state of

Virginia the relevant forum for disputes arising from dealings with that agency. *See*

*Jackson-Spells v. Rumsfeld*, 457 F. Supp. 2d 39, 40 n.1 ("[T]he principal office of the

Department of Defense is in Arlington, Virginia, not the District of Columbia.");

15

*Spencer v. Rumsfeld*, 209 F. Supp. 2d 15, 18 (D.D.C. 2002) (same). Alkanani's

complaint does not allege otherwise, which means that there is no factual basis for any

inference that the Contract negotiations constituted a business transaction that took

place in the District of Columbia for the purpose of the long-arm statute. Similarly, the

record evidence indicates that Aegis UK actually signed the Contract in the United

Kingdom (Day Decl. ¶ 8), and Alkanani has not only failed to allege that the Contract

was executed in the District of Columbia, he has made no allegations or argument

related to the place of execution at all. (*See, e.g.*, Pl.'s Opp'n at 9 (arguing only that

Aegis UK secured a contract with the U.S. government, "a party located in the District

of Columbia"); Pl.'s Objections at 23 (in response to "Aegis UK's argument that the

[C]ontract was not entered in [the] District of Columbia[,]" arguing that physical

presence in the forum is not required).) As noted at the outset, it is the plaintiff's

burden to demonstrate that the requirements of the long-arm statute have been satisfied,

and Alkanani's failure to allege that the Contract was negotiated or signed in the

District of Columbia is fatal to his contention that the Contract can be considered a

"business transaction" for the purpose of § 13-423(a)(1).

### 2. Does Alkanani's Claim "Aris[e] From" A Business Transaction That Occurred In The District Of Columbia?

Under the D.C. long-arm statute, if a plaintiff has proven that the defendant

"transacted business" in the District of Columbia, he must also show that his claim

"aris[es] from" that business. *See* D.C. Code § 13-423(a); *see also Mwani v. bin Laden*,

417 F.3d 1, 12 (D.C. Cir. 2005) (quoting *Helicopteros Nacionales de Colombia, S.A. v.

Hall*, 466 U.S. 408, 414 (1984)); *Brunson*, 404 F. Supp. 2d at 227 (citation omitted).

This Court's conclusion that the Contract does not constitute a relevant business

16

30

transaction, and that in any event there is no factual basis for concluding that the

Contract was negotiated or executed in the District of Columbia, necessarily disposes of

the "arises from" inquiry.  However, Magistrate Judge Kay reached this secondary

question and concluded that there was no nexus between any business the Aegis UK

conducted in D.C. and Alkanani's injury—a conclusion that Alkanani strenuously

rejects.  (*See* Pl.'s Objections at 26-27.)  This Court deems it worthwhile to explain its

own assessment of the nexus requirement and its application in the context of this case.

The statutory nexus requirement is essential to an exercise of specific

jurisdiction because "[t]he claim itself must have arisen from the business transacted in

the District or there is no jurisdiction[]" by the very terms of the long-arm statute.

*Novak-Canzeri*, 864 F. Supp. at 206 (citation omitted); *see also* D.C. Code § 13-423(b)

("When jurisdiction over a person is based solely upon this section [§ 13-423(a)], only

a claim for relief arising from acts enumerated in this section may be alerted against

him.").  Notably, the operative phrase is "aris[e] from."  "Some courts have interpreted

the phrase 'arise [from]' as endorsing a theory of 'but-for' causation, while other courts

have required proximate cause to support the exercise of specific jurisdiction[.]"

*Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1078 (10th Cir. 2008)

(internal citations omitted); *see also Shoppers Food Warehouse*, 746 A.2d at 332-34

(explaining courts' various approaches to defining "arise from").  For the purpose of the

D.C. long-arm statute, it is clear that "arise from" is to be interpreted "flexibly and

synonymously with 'relate to' or having a 'substantial connection with[,]'" which, at a

minimum means that the claim raised must "have a discernible relationship" to the

defendant's business transacted in the district.  *Rundquist v. Vapiano SE*, No. 09-1107,

17

2012 WL 5954706, at *8 (D.D.C. Nov. 9, 2012) (citation omitted); *see also Shoppers Food Warehouse*, 746 A.2d at 332.

Alkanani argues that his injury bears a "discernible relationship" to Aegis UK's contacts in the District of Columbia because he was "injured as a result of the services [Aegis UK] was providing pursuant to the [C]ontract." (Pl.'s Objections at 27.) But as Magistrate Judge Kay concluded, the fact that the Contract was for services pursuant to which Aegis UK placed security employees in Iraq, and that those employees ultimately acted to injure Alkanani, does not establish the necessary relationship between Contract and claim for personal jurisdiction purposes as a matter of law. This is so primarily because Alkanani "was neither a party nor a beneficiary of the contract" and, indeed, he has brought a *tort* claim, not an action for breach of contract. (Report and Recommendation at 10; *see also* Compl. ¶¶ 54-71.) Courts have appropriately concluded that an injury sounding in tort does not "arise from" a contract for services for the purpose of specific jurisdiction. *See, e.g.*, *Gonzalez*, 891 A.2d at 232 (holding that a personal injury claim based on an elevator falling did not arise from a maintenance contract between her employer and the elevator manufacturer because she sued in tort and not for a breach of contract); *see also Collazo v. Enter. Holdings, Inc.*, 823 F. Supp. 2d 865, 873 (N.D. Ind. 2011) (plaintiff's personal injury claim based on an accident aboard a trolley en route to pick up her rental car did not arise out of car rental agreement for the purpose of Indiana's long-arm statute); *Martino-Valdez v. Renaissance Hotel Mgmt. Co.*, No. 10-1278, 2011 WL 5075658, at *3 (D.P.R. Aug. 25, 2011) (plaintiff's personal injury claim based on a slip-and-fall in a hotel room did not arise out of the agreement to reserve the room for the purpose of Puerto Rico's long-

18

arm statute). And this legal conclusion is clearly compelled under the circumstances

presented in this case, given that Alkanani's injury occurred *abroad* and D.C.'s long-

arm statute specifically addresses tort claims in two sub-sections that are distinct from

the provision that brings the contract here within the statute's purview. *See* D.C. Code

§ 13-423(a)(3), (4). The tort-related sub-sections provide for specific jurisdiction over

a nonresident defendant only when the plaintiff's claim involves tortious injury that

occurs *in* the District of Columbia—not injury that occurs elsewhere, like Alkanani's.

*See* D.C. Code §§ 13-423(a)(3), (a)(4) (allowing for personal jurisdiction over claims

arising from the defendant's "causing tortious injury *in* the District of Columbia by an

act or omission" that took place inside or outside the District of Columbia (emphasis

added)); *see also Lott v. Burning Tree Club, Inc.*, 516 F. Supp. 913, 916 (D.D.C. 1980)

(noting that § 13-423(a)(3) "clearly separates the act from the tortious injury and

affords personal jurisdiction over non-residents only when both act and injury occur in

the District" (citation omitted)).[5] Alkanani cannot expect this Court to interpret the

statutory nexus requirement to permit the exercise of specific personal jurisdiction over

Aegis UK under circumstances in which other provisions in that same statute would

clearly prohibit such jurisdiction. *Cf. FDA v. Brown & Williamson Tobacco Corp.*, 529

U.S. 120, 133 (2000) ("It is a fundamental canon of statutory construction that the

words of a statute must be read in their context and with a view to their place in the

overall statutory scheme." (internal quotation marks and citations omitted)).

---

[5] Indeed, tortious acts that occur outside of the District of Columbia do not give rise to specific
jurisdiction unless the defendant "*expressly aimed* its tortious conduct at the forum[,]" and the harm
caused by the defendant was primarily felt in the forum. *See Price v. Socialist People's Libyan Arab
Jamahiriya*, 294 F.3d 82, 95 (D.C. Cir. 2002) (emphasis in original) (citing *IMO Indus., Inc. v. Kiekert
AG*, 155 F.3d 254, 255-66 (3d Cir. 1998), and *Wallace v. Herron*, 778 F.2d 391, 394-95 (7th Cir.
1985)).

19

Consequently, in addition to the fact that the Contract does not qualify as a business transaction that took place in the District of Columbia for the purpose of § 13-423(a)(1), this Court agrees with Magistrate Judge Kay that Alkanani's injury cannot be considered to have "aris[en] from" Aegis UK's alleged business transaction (the Contract) for the purpose of § 13-423(b).

### B. The Court Cannot Exercise General Personal Jurisdiction Over Aegis UK

Having concluded that the D.C. long arm statute does not permit the exercise of specific jurisdiction over Aegis UK, the Court turns to consider the alternative basis for the exercise of personal jurisdiction: where the defendant's contacts in the forum are so extensive that the defendant can be haled into court in the forum for any type of claim.

District of Columbia law permits an exercise of "general jurisdiction" over a foreign corporation if the corporation is "doing business" in the District. *See* D.C. Code § 13-334(a); *J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2787 (2011) (noting that, when there is general personal jurisdiction, the court can "resolve both matters that originate within the [forum] and those based on activities and events elsewhere" (citing *Helicopteros*, 466 U.S. at 414 & 415 n.9)); *see also Gorman*, 293 F.3d at 509 (citations omitted); *Azamar v. Stern*, 662 F. Supp. 2d 166, 173 (D.D.C. 2009) ("[General jurisdiction] provides for personal jurisdiction over a nonresident defendant even if the claim at issue does not arise from the defendant's activities in the District of Columbia when the defendant is 'doing business' in the District." (citation omitted)). Section 13-334(a) of the D.C. Code provides:

20

In an action against a foreign corporation *doing business in the District*,
process may be served on the agent of the corporation or person
conducting its business, or, where he is absent and cannot be found, by
leaving a copy of the principal place of business in the District, or, where
there is no such place of business, by leaving a copy at the place of
business or residence of the agent in the District, and that service is
effectual to bring the corporation before the court.

D.C. Code §13-334(a) (emphasis added).  "Although on its face § 13-334(a) appears

only to specify proper methods of service, the District of Columbia Court of Appeals

has held that compliance with the statute gives rise to personal jurisdiction over a

foreign corporation doing business in the District."  *Gorman*, 293 F.3d at 509 n.1

(citing *AMAF Int'l Corp. v. Ralston Purina Co.*, 428 A.2d 849, 850 (D.C. 1981)); *El-

Fadl v. Central Bank of Jordan*, 75 F.3d 668, 673 n.7 (D.C. Cir. 1996), *abrogated on

other grounds by Samantar v. Yousuf*, 560 U.S. 305, 310 n.4 (2010).

Unlike the statutory provision governing specific jurisdiction, which sets forth

the particular scenarios in which it may apply, the D.C. Code does not include a

definition of the phrase "doing business," nor does it provide examples of what it may

entail.  However, D.C. courts have made clear that Section 13-334(a)'s "doing

business" jurisdiction reaches as far as the limits of constitutional due process.  *Day v.

Cornér Bank (Overseas) Ltd.*, 789 F. Supp. 2d 150, 155-56 (D.D.C. 2011) ("[T]he reach

of doing business jurisdiction under § 13-334(a) is co-extensive with the reach of

constitutional due process." (quoting *FC Inv. Grp.*, 529 F.3d at 1092)).  And it is well

settled that, under the Due Process Clause, general jurisdiction over a foreign

corporation is only proper if the defendant's contacts in the forum are "continuous and

systematic."  *Int'l Shoe*, 326 U.S. at 317; *Johns v. Newsmax Media, Inc.*, 887 F. Supp.

2d 90, 95-96 (D.D.C. 2012) (noting that due process requires a defendant's contacts in

21

the forum to be so "continuous and systematic" that requiring the defendant to answer any claim in the forum's courts "does not offend traditional notions of fair play and substantial justice").

Applying due process principles to the D.C. general jurisdiction statute, courts have held that in order to establish that a corporation is "doing business" in the District of Columbia for the purposes of general jurisdiction under § 13-334(a), a plaintiff must demonstrate that a company has a "continuing corporate presence in [D.C.] with the aim of advancing its objectives [here]" and must conduct "substantial business" in the forum. *Khatib v. Alliance Bankshares Corp.*, 846 F. Supp. 2d 18, 26-27 (D.D.C. 2012) (citations omitted)); *see also El-Fadl*, 75 F.3d at 675; *Gonzalez*, 891 A.2d at 233. Moreover, and perhaps even more significant, the Supreme Court recently emphasized that "engag[ing] in a substantial, continuous, and systematic course of business" in the forum is not, in and of itself, enough for general jurisdiction to comport with due process. *Daimler*, 134 S. Ct. at 757-58. Rather, the defendant's contacts and affiliations with the forum must be so extensive, so constant, and so prevalent that they render the defendant "essentially at home" in the forum. *Id.* (holding that a company's maintenance of several facilities and a regional office in the forum state, coupled with significant sales in the forum state, was not enough to make the company "essentially at home" in the forum for the purposes of general jurisdiction).

Considering how these principles might apply to the instant case, it is undisputed that the archetypal bases for the exercise of general jurisdiction over a corporation— *i.e.,* having its place of incorporation or principal place of business in the forum in which it is sued—are not present here. Nevertheless, Alkanani maintains that Aegis

22

UK's meetings and negotiations with the U.S. government in D.C.; its website; its U.S. tax filings; and its executives' trips to D.C. to meet with non-government clients are sufficient to satisfy the general jurisdiction standard. As explained further below, however, this Court cannot exercise general jurisdiction over Aegis UK on these bases because Aegis UK's contacts with the federal government are not to be included in the jurisdictional analysis, and because the company's other activities in the District of Columbia are not so substantial, continuous, or systematic to render Aegis UK "essentially at home" here. *Daimler*, 134 S. Ct. at 757-58.

### 1. Aegis UK's Meetings And Contract Negotiations With Government Officials

Alkanani argues, first of all, that Aegis UK's principal client is the United States government, which is seated in the District of Columbia, and that this single client has provided Aegis UK with "the majority of its revenue—hundreds of millions of dollars." (Pl.'s Objections at 7; *see also* Pl.'s Opp'n at 19 (same).) In this regard, Alkanani points out that Aegis UK executives made 48 trips to the District of Columbia area to meet with U.S. government officials in order to negotiate the very Contract at issue here (though the actual negotiations took place in Virginia) and/or to visit the Iraqi embassy in the District of Columbia in connection with the Contract. (*See* Ex. A to White Decl., ECF No. 48-3 (spreadsheet of Aegis UK employees' trips to the District); Report and Recommendation at 3 (noting the 48 business trips made "for the purpose of meeting government officials or the Iraqi Embassy"); *see also* Pl.'s Objections at 8 (focusing on Aegis UK's business trips to the District); *id.* at 23 (arguing that "Aegis has availed itself of the privileges and protections of the District of Columbia[ ] by signing a contract with the Department of Defense (DoD) located in DC").) However, as

23

Magistrate Judge Kay determined, the government contacts exception thwarts this line of argument.  (Report and Recommendation at 8 n.7, 9-10.)

As explained in Part III.A.1 *supra*, pursuant to the government contacts exception, a nonresident's entry into the District of Columbia for "the purpose of contacting federal governmental agencies cannot serve as a basis for personal jurisdiction."  *Savage*, 460 F. Supp. 2d at 62 (quoting *Freiman*, 925 F. Supp. at 24); *Ferrara*, 54 F.3d at 831 (noting that the government contacts exception provides that contacts with federal agencies within the District of Columbia "will not give rise to personal jurisdiction").  This means that, if the government contacts exception applies, none of Aegis UK's visits to the District of Columbia to meet with United States government agencies or the Iraqi embassy enter into the jurisdictional equation.  *See Savage*, 460 F. Supp. 2d at 62.

To forestall this result, Alkanani maintains that the government contacts exception does not apply to the government meetings at issue here because, in addition to having contact with the government, Aegis UK *also* had other private business dealings in the District of Columbia.  (Pl.'s Objection at 12 (contending that the government contacts principle "is not applicable here because, apart from contract with the government agencies, Aegis UK has a number of contacts with the District of Columbia[.]"); *see also id.* at 9 ("The discovery documents produced show that Aegis UK has provided services to private entities/individuals in the District of Columbia, apart from the U.S. Army.").)  Alkanani is unable to provide any authority for the proposition that otherwise excludable government contacts are to be counted for general personal jurisdiction purposes whenever the defendant has other non-governmental

24

contacts in the District of Columbia, and the case law in this area suggests the opposite.

*See, e.g.*, *Savage*, 460 F. Supp. 2d at 59 (citation omitted) (finding no general

jurisdiction over defendant whose government contacts were excluded from

consideration despite the fact that the company had also placed advertisements in D.C.

publications).  Moreover, and in any event, Alkanani has not provided enough

information about Aegis UK's "private business dealings" to permit a conclusion that

those contacts qualify as "doing business" in the District such that his bootstrapping

theory would even be plausible in this context.  *See infra* Part III.B.2.c.

Accordingly, Aegis UK's contacts with the federal government, including its

executives' trips to D.C. to meet and negotiate contracts with government agencies,

cannot form the basis of general jurisdiction, as Magistrate Judge Kay properly

concluded.  (*See* Report and Recommendation at 8 n.7 (rejecting Alkanani's request to

include Aegis UK's contract with the U.S. government as a minimum contact because

the U.S. government does "not constitute contacts within the District of Columbia for

purposes of jurisdictional analysis.").)

### 2.  Aegis UK's Other Contacts With The District Of Columbia

Setting aside Aegis UK's contacts with the federal government, Alkanani

contends that general jurisdiction still can be exercised over Aegis UK on the basis of

the company's website, tax returns, and the various trips that Aegis UK executives

made to D.C. to meet with non-governmental entities.  For the following reasons, this

Court concludes otherwise.

25

*a. Aegis UK's Website*

Alkanani argues that Aegis UK's website gives rise to general jurisdiction because the website advertises that Aegis UK has an office in the District of Columbia and because the website states that clients have access to a "round-the-clock tailored threat assessment system" and "various other restricted online secure services." (Pl.'s Objections at 13-14.)[6] Aegis UK takes issue with Alkanani's characterization of its website on two grounds. First, Aegis UK notes that, although its website once referred to a D.C. office, such reference was only intended to suggest a D.C.-*area* office, and the website was actually referring to subsidiary Aegis LLC's headquarters in nearby Virginia, not any office in the District of Columbia. (Def.'s Resp. at 20.) Second, Aegis UK contends that its website is too passive to constitute a basis for general jurisdiction that comports with due process because the website only offers clients the ability to *access* information, not to create accounts or engage in any transactions in D.C. (*Id.* at 20-21.)

Courts in this circuit have considered similar website-related arguments, and have concluded that, in order for a defendant's internet presence to give rise to general jurisdiction, residents of the forum must use the website in a continuous and systematic way. *FC Inv. Grp.*, 529 F.3d at 1092; *Atlantigas*, 290 F. Supp. 2d at 52 ("The question is not whether District of Columbia residents 'can' transact business in the District with the non-resident defendant through the defendant's website, but if they actually 'do[.]'" (citing *Gorman*, 293 F.3d at 512-13)). Moreover, even if actual use of a website by

---

[6] The link that Alkanani provides to the page of Aegis UK's website that purportedly advertises a D.C. office appears to be inoperable at present. (*See* Pl.'s Objections at 11 n.1 (citing http://www.aegisworld.com/index.php/about-us/global-experience).) As of the date of this opinion, Aegis UK's website advertises an office in the U.S., without further detail; however, Aegis UK concedes that its website once mentioned an office in the D.C. region. (Def.'s Resp. at 20.)

26

D.C. residents is established, general jurisdiction is only appropriate if the website is commercial in nature, and if its features are so interactive that it operates, in essence, like a virtual business establishment—*i.e.*, the website permits users to engage fully with the company in a manner that suggests that it was purposefully developed in order for the company to maintain systematic and continuous contact with residents of the forum state.  *See GTE New Media Servs.*, 21 F. Supp. 2d at 38 (citations omitted).

    The paradigmatic website that qualifies as "doing business" in the forum for the purpose of general personal jurisdiction is a website that enables the residents of the forum to start and complete business transactions with the defendant entirely online. *See Gorman*, 293 F.3d at 513 (finding the website that defendant, an out-of-state securities broker, operated may have been sufficient to exercise general jurisdiction where the website enabled D.C. residents to open brokerage accounts, transmit funds electronically, and buy and sell securities).  By contrast, a website that merely provides residents of the forum with access to information is not enough to establish jurisdiction. *See FC Inv. Grp.*, 529 F.3d at 1092 ("An essentially passive website through which customers merely access information is insufficient [for jurisdiction]." (internal quotation marks and citation omitted); *GTE New Media Servs.*, 199 F.3d at 1349-50 ("[P]ersonal jurisdiction surely cannot be based solely on the ability of District residents to access defendants' websites, for this does not by itself show any persistent course of conduct by the defendants in the District."); *see, e.g.*, *Doe I v. State of Israel*, 400 F. Supp. 2d 86, 121 (D.D.C. 2005) (noting that access to information on a website alone is not even a sufficient contact for specific jurisdiction); *Lewy v. So. Poverty Law Ctr., Inc.*, 723 F. Supp. 2d 116, 125 (same).  When a website falls somewhere in the

27

middle—when it mostly serves as a source of information but also solicits financial

contributions in the forum—the trend within this district is to require other non-internet

contacts in the forum in order to exercise jurisdiction. *See, e.g.*, *Blumenthal v. Drudge*,

992 F. Supp. 44, 55-56 (D.D.C. 1998) (exercising jurisdiction over a defendant whose

website distributed news to D.C. residents, and solicited and actually received financial

contributions from D.C. residents, where that defendant also regularly visited D.C. for

business purposes); *Heroes, Inc. v. Heroes Found.*, 958 F. Supp. 1, 5 (D.D.C. 1998)

(exercising jurisdiction over the defendant company that solicited financial donations

on its home page as well as in advertisements in local newspapers).

In light of the relevant case law and applicable legal standards regarding when a

website is sufficient to give rise to general personal jurisdiction, this Court agrees with

Magistrate Judge Kay that Aegis UK's website does not establish a basis for the

exercise of general jurisdiction over Aegis UK.  First of all, Alkanani has failed to

adduce any evidence that D.C. residents actually used Aegis UK's website, let alone in

a continuous and systematic way, and absent such evidence the website cannot give rise

to jurisdiction.  *See FC Inv. Grp.*, 529 F.3d at 1092; *Atlantigas*, 290 F. Supp. 2d at 52.[7]

Moreover, although Aegis UK's website advertises that the company's customers

receive a "round-the-clock tailored threat assessment system" (Pl.'s Objections at 13),

there is nothing in the record to suggest that anyone, much less D.C. residents, can sign

up for Aegis UK's services or otherwise become an Aegis UK customer through the

website, nor has Alkanani alleged that website users can enter transactions for Aegis

---

[7] This Court need not accept as true Alkanani's bare allegation that D.C. residents have used Aegis UK's website.  *See Am. Action Network*, 2013 WL 5428857, at \*2.

UK's services in a way that would constitute "doing business" over the internet. *Cf.*

*Gorman*, 293 F.3d at 512-13.

Finally, the fact that Aegis UK's website ostensibly holds itself out as having a

"D.C. Office," when such is arguably not the case, is beside the point:  whatever the

Defendant may *say* about its degree of contact with a forum, in order to assert general

jurisdiction over a defendant, the court still must find facts establishing the requisite

*actual* connection to the forum.  *See, e.g.*, *Estate of Thompson ex rel. Thompson v.

Mission Essential Pers., LLC*, No. 11-547, 2013 WL 6058308, at \*6 (M.D.N.C. Nov.

14, 2013) (finding the defendant's website advertisement of an office in the forum was

not sufficient to establish general jurisdiction, and noting that the Court was still

required to consider the evidence of Defendant's business interactions within the state

to determine if those actions were enough for general jurisdiction); *see also Akerblom v.

Ezra Holdings Ltd.*, 848 F. Supp. 2d 673, 684 (S.D. Tex. 2012)*, aff'd,* 509 F. App'x 340

(5th Cir. 2013) (deciding that a plaintiff could not establish jurisdiction over the

defendant based on the defendant's business presentation that mentioned an office in

the forum when the office in question did not actually exist).  Here, the Court concludes

that, for the reasons already discussed, Aegis UK's website itself is not a sufficient

connection.

### *b.  Tax Returns That Aegis UK Filed In The District of Columbia*

Alkanani next asserts that tax returns Aegis UK filed in the District of Columbia

have jurisdictional implications.  (Pl.'s Objections at 8 (maintaining that Aegis UK's

tax returns demonstrate that the company engaged in "a significant amount of business"

in the District of Columbia).)  During the course of discovery, Aegis UK produced

federal tax returns that it filed in the District of Columbia for the years 2006 through

2009, and those returns reported nearly one million dollars of income that its

subsidiary, Aegis LLC, had earned.  (Pl.'s Opp'n at 7; Pl.'s Objections at 20; Def.'s

Resp. at 22.)  Magistrate Judge Kay touched on the tax returns in passing, noting that

such returns do not reflect any income derived from Aegis UK's own business activities

in the District of Columbia (Report and Recommendation at 3), and concluding that

there was no general jurisdiction as a result of these returns in part because there was

no agency relationship through which Aegis LLC's business activity could be imputed

to Aegis UK (*id.* at 6).

        This Court agrees with that conclusion for two reasons.  First, to the extent that

Alkanani's argument is that Aegis UK's act of filing is itself a contact with D.C., there

is no support in law or logic for the proposition that the simple act of forwarding tax

forms into a forum state gives rise to general personal jurisdiction in that forum.  As

has already been stated repeatedly, a defendant's contacts with a forum must be

continuous, systematic, and extensive, and it is patently obvious that the mere act of

filing a return falls far short of this rigorous standard.  Second, and even more

significant, the tax returns at issue here were not indicative of the extent of Aegis UK's

contacts with the District; indeed, it is undisputed that the forms at issue in the instant

matter reported only D.C. income that subsidiary Aegis LLC had received, rather than

any money that Aegis UK had earned in this forum. (Def.'s Resp. at 22; *see* Report and

Recommendation at 3.)  This Court has already concluded that Aegis LLC is not

properly considered to be the alter ego of Aegis UK for jurisdiction purposes, *Alkanani*,

2013 WL 5203613, at *1; therefore, Aegis LLC's D.C. earnings are irrelevant to the

30

instant personal jurisdiction analysis. *Compare El–Fadl,* 75 F.3d at 675–76 ("[I]f parent and subsidiary are not really separate entities, or one acts as the agent of the other, the local subsidiary's contacts can be imputed to the foreign parent." (internal quotation marks and citations omitted)). In this same vein, the Supreme Court has emphatically rejected the theory that foreign corporations can be subject to general jurisdiction whenever they have an in-state subsidiary or affiliate, calling it an inappropriately "sprawling view of general jurisdiction[.]" *Daimler*, 134 S. Ct. at 760 (citation omitted). Therefore, under the appropriately narrow view of the proper scope of personal jurisdiction, parent Aegis UK cannot be haled into court in the District of Columbia solely on the basis of its relationship with subsidiary Aegis LLC, no matter how much business Aegis LLC has done in this forum.

In short, Alkanani's attempt to base general jurisdiction over Aegis UK as a result of its having filed fax forms in D.C. fails because neither the fact that Aegis UK submitted documents to D.C. tax authorities that reported Aegis LLC's income, nor the fact that Aegis LLC had income earned from the District of Columbia to report, serves to establish that Aegis UK had the requisite contact with the District of Columbia for the exercise of general personal jurisdiction over the company.

### c. Aegis UK's Private Business Dealings In D.C.

Finally, the Court also rejects Alkanani's argument that the contacts and communications Aegis UK employees had with non-governmental residents of the District of Columbia when visiting this area to solicit business and attend conferences are sufficient to establish that the exercise of general jurisdiction over Aegis UK would be proper.

31

As noted, the key to demonstrating the propriety of general jurisdiction over a defendant is showing that the defendant had frequent and sustained contacts with residents of the forum state that were directed at doing business in the forum such that the defendant was "essentially at home" there. *Daimler*, 134 S. Ct. at 751 (citation omitted); *see also Khatib*, 846 F. Supp. 2d at 26 (citation omitted).  Here, the record establishes that in the five years between 2004 and 2009, personnel from Aegis UK made just over 100 trips to the District of Columbia area.  (White Decl. ¶ 3; Ex. A to White Decl.)  This may seem like a significant number of visits to the area, but about one third of these trips were actually made to visit Aegis LLC's office in Virginia (*see* White Decl. ¶ 3; Ex. A to White Decl.), so they hardly qualify as "doing business" with D.C. residents in the District of Columbia.  Another 48 trips were made for the purposes of meeting with government officials in Virginia to negotiate contracts or visiting the Iraqi embassy in the District of Columbia in connection with those contracts (White Decl. ¶ 3; Ex. A to White Decl.; Def.'s Mot. at 23 n.6)—these are government contacts that are excluded from the analysis for the reasons explained above.

This means that the sum total of the relevant appearances that Aegis UK employees made in the District of Columbia between 2004 and 2009 were (1) the approximately 37 times that Aegis UK employees visited D.C. for conferences and to negotiate or oversee certain nongovernmental contracts with D.C. corporate residents regarding work performed outside the District of Columbia (White Decl. ¶ 3; Ex. A to White Decl.), and (2) the handful of Aegis UK's remaining trips to the District of Columbia related to managing certain existing contracts with D.C.-based companies; exploring potential business acquisitions in the District of Columbia; and meeting with

32

banks, attorneys, and special interest groups here. (White Decl. ¶ 3; Ex. A to White

Decl.; Report and Recommendation at 3-4.) With respect to the first category of

nongovernmental contacts, Alkanani has not shown that attending conferences and

engaging in negotiations regarding contracts for work to be performed *outside* the

District of Columbia qualifies as "doing business" in the District of Columbia. *SEC v.*

*Lines Overseas Mgmt., Ltd.*, No. 04-302, 2005 WL 3627141, at \*7 (D.D.C. Jan. 7, 2005)

(even frequent contacts in D.C. were not enough when they did not pertain to doing

business in D.C.). Regardless, it is clear that three dozen such trips over the course of

five years—less than one per month, on average—does not a "continuing corporate

presence" make. *See Allen v. Russian Fed'n*, 522 F. Supp. 2d 167, 196 (D.D.C. 2007)

(noting that defendant's regular yearly meetings with U.S. officials and sporadic visits

to the forum to enter contracts with private entities were not enough for general

jurisdiction); *AGS Int'l Servs. S.A. v. Newmont USA Ltd.*, 346 F. Supp. 2d 64, 76-77

(D.D.C. 2004) (fourteen trips to the forum over two years to discuss business funding

were not enough for general jurisdiction).

Similarly, the few trips that were specifically directed toward managing ongoing

contracts with D.C.-based businesses or acquiring additional nongovernmental business

were unquestionably infrequent, and certainly not enough to render Aegis UK

"essentially at home" in D.C., as required for personal general jurisdiction. *See, e.g.*,

*AGS Int'l Servs.*, 346 F. Supp. 2d at 76 (finding that employees visiting D.C. on average

over twice per month was not systematic and continuous enough to create a continuing

corporate presence). And that is even setting aside the distinction between trips aimed

at *soliciting* business and those directed toward *doing* business, which could reduce the

33

number of relevant Aegis UK contacts in the District of Columbia even further, given

that the majority of the potential business opportunities that Aegis UK employees

traveled here to solicit were never realized.  (*See* White Decl. ¶ 3; Ex. A to White Decl.

at 2-48.)

In sum, over Alkanani's objection, this Court agrees with Magistrate Judge

Kay's finding that Aegis UK's activities in the District of Columbia—*e.g.*, its (1)

contract negotiations and meetings with the U.S. government; (2) website; (3) tax

filings; and (4) contacts with non-government clients—did not render the company

"essentially at home" here for jurisdictional purposes.  None of these activities is

sufficient to establish the propriety of general jurisdiction over Aegis UK standing

alone, and even taken together, these activities fall short of the kind of "systematic and

continuous" contacts with the District of Columbia that is required in order for this

Court to exercise personal jurisdiction over Aegis UK consistent with D.C. law and the

Due Process Clause.  *See Daimler*, 134 S. Ct. at 746; *see also AGS Int'l Servs.*, 346 F.

Supp. 2d at 76 (noting that even when a company has a local office in D.C., receives

funding from a D.C.-based bank, is in regular contact with the U.S. government and

foreign embassies, and has employees with leadership positions in local trade

associations , the company was not "doing business" in D.C. for the purposes of general

jurisdiction).  Consequently, the Court concludes that it cannot exercise general

jurisdiction over Aegis UK.

### C.  Coalition Provisional Authority Order 17 Does Not Provide A Separate Basis For Jurisdiction

Having failed to establish personal jurisdiction over Aegis UK through the

traditional routes, Alkanani tries a different tack.  He contends that Coalition

34

Provisional Authority Order Number 17 ("CPA Order 17")—an order that the

transitional government of Iraq issued shortly after the war in Iraq began—confers

personal jurisdiction over Aegis UK with respect to lawsuits filed in the District of

Columbia, and that Aegis UK should be estopped from arguing otherwise in light of its

reference to that Order in the context of prior litigation in this district. (Pl.'s Opp'n at

7, 14, 17-18; Pl.'s Objections at 6, 27-28.) Once again, this Court's analysis is

consistent with Magistrate Judge Kay's reasoned conclusion: CPA Order 17 does not

give rise to jurisdiction over Aegis UK.

The leader of the Coalition Provisional Authority issued CPA Order 17 "during

the early days of the U.S. occupation of Iraq." *Harris v. Kellogg, Brown & Root Servs.,*

*Inc.*, 796 F. Supp. 2d 642, 649 (W.D. Penn. 2011) (quoting *Galustian v. Peter*, 591 F.3d

724, 728 (4th Cir. 2010)). The order provides, in relevant part, that "[c]ontractors shall

be immune from Iraqi legal process with respect to acts performed by them pursuant to

the terms and conditions of a Contract or any sub-contract thereto." Coal. Provisional

Auth. Order No. 17 (June 27, 2004) ("CPA Order 17") § 3.[8] The order further states

that personal injury claims that arise from the acts or omissions of military contractors

and their personnel for activities relating to performance of their contracts

shall be submitted and dealt with by the Sending State whose personnel
(including the Contractors engaged by that State), property, activities, or
other assets are alleged to have caused the claimed damage, *in a manner*
*consistent with the Sending State's laws, regulations and procedures*.

*Id*. (emphasis added). Alkanani contends that the order's language directing that claims

"*shall* be subject to the exclusive jurisdiction of their Sending States" indicates that

CPA Order 17 automatically confers jurisdiction over Aegis UK in the District of

---

[8] *Available at* http://www.usace.army.mil/Portals/2/docs/COALITION_PROVISIONAL.pdf (last visited
Mar. 24, 2014).

Columbia. (Pl.'s Objections at 28.) But Alkanani makes this argument without citing any authority, and it is clear that the argument has no merit.

The appropriate analysis of CPA Order 17 "begins with its text." *Harris*, 796 F. Supp. 2d at 653 (quoting *Abbott v. Abbott*, 560 U.S. 1, 10 (2010) (internal quotation marks omitted). As Magistrate Judge Kay observed, the plain language of CPA Order 17 does not, in and of itself, create jurisdiction in any given forum, much less in any state or federal court in the United States. (*See* Report and Recommendation at 11.) *Cf. United States v. Kellogg Brown & Root Servs., Inc.*, 800 F. Supp. 2d 143, 156 n.5 (D.D.C. 2011) ("In a 'suit on a statute'—that is, a suit in which the statute itself grants the recovery, *creates the jurisdiction*, or permits special damages—the plaintiff must show both that he is within the class the statute sought to protect and that the harm done was one that the statute was meant to prevent." (quoting *Abrahams v. Young & Rubicam Inc.*, 79 F.3d 234, 237 (2d Cir. 1996))). And even assuming *arguendo* that the District of Columbia is the relevant "Sending State,"[9] CPA Order 17 clearly requires that the applicable process for handling claims be one that accords with the Sending State's law. *See* CPA Order 17 § 18; *see also Daimler*, 134 S. Ct. at 752-53 (noting that an exercise of personal jurisdiction must comport with the constitution and the relevant state long-arm statute). This Court has already concluded that D.C.'s long-arm statute and constitutional due process preclude the exercise of specific or general personal jurisdiction over Aegis UK under the circumstances presented here. Thus, this Court agrees with Magistrate Judge Kay that nothing in the text of CPA Order 17 authorizes

_____

[9] Notably, neither party provides authority establishing that the District of Columbia is the relevant "Sending State" here for the purposes of CPA Order 17, which raises the question of whether CPA Order 17 would give rise to jurisdiction in District of Columbia courts even under Alkanani's interpretation.

36

this Court to exercise jurisdiction over Aegis UK. (*See* Report and Recommendation at

11 (CPA Order 17 cannot "abrogate the U.S. Constitutional requirements of due

process" or the relevant statutory requirements, and "does not have the power to confer

jurisdiction when none would otherwise exist[.]").)

Finally, the Court rejects Alkanani's contention that Aegis UK's own prior

interpretation of CPA Order 17, or the fact that the company apparently consented to

the court's jurisdiction in this district in the context of another matter, somehow

prevents Aegis UK from objecting to the exercise of personal jurisdiction with respect

to the instant claim. (Pl's Objections at 27 (arguing for estoppel based on Aegis UK's

alleged attempt to "use [CPA Order 17] as both a sword and a shield"); *see also id.*

("Aegis UK has used this Order to obtain this Court's jurisdiction when it was seeking

justice, but now inconsistently argues that the Order cannot confer jurisdiction over

it.").)  Alkanani attached to the instant complaint a copy of a trademark infringement

complaint that Aegis UK filed in the United States District Court for the District of

Columbia on March 6, 2008, in which Aegis UK references CPA Order 17. (Aegis

UK's Compl. in *Aegis Def. Servs. Ltd. v. Aegis Mission Essential Personnel, LLC*, No.

08-cv-407, Ex. A to Compl., ECF No. 1-1.)  Notably, Alkanani provides no detail

regarding Aegis UK's alleged argument that CPA Order 17 gave rise to personal

jurisdiction over the defendant in that case.  This lack of specificity, in and of itself,

undermines Alkanani's argument.  In any event, it appears that Aegis UK contended

that the court had subject-matter jurisdiction over the parties' activities in Iraq pursuant

to CPA Order 17, *not* personal jurisdiction. (*Id.* ¶ 5.)  Indeed, Aegis UK's trademark

complaint itself belies Alkanani's point, as Aegis UK was a plaintiff in that action, and

37

the company alleged an entirely different basis for personal jurisdiction over the defendant in that case. (*Id.* ¶ 4 (alleging that the defendant "maintains an office in the District of Columbia, does business in the District of Columbia, and is subject to suit here").)[10]

For all of the foregoing reasons, CPA Order 17 does not create an independent basis for personal jurisdiction over Aegis UK.

## IV.   CONCLUSION

Because there is no basis for exercising personal jurisdiction over Aegis UK as explained above, this Court adopts Magistrate Judge Kay's Report and Recommendation with respect to its conclusions regarding personal jurisdiction.[11] Accordingly, as set forth in the accompanying order, Alkanani's objections are

---

[10] Notably, even if Aegis UK had alleged that CPA Order 17 provided a basis for personal jurisdiction over the defendant in the context of its trademark infringement action, Alkanani's argument would still fail because neither waiver nor estoppel applies to prevent Aegis UK's denial of personal jurisdiction in this case. First, it is well established that consent to personal jurisdiction in one case does not waive the right to assert lack of personal jurisdiction in another case in that same forum. *See In re Papst Licensing GMBH & Co. KG Litig.*, 590 F. Supp. 2d 94, 100 (D.D.C. 2008) (citing *Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44, 50 n.5 (2d Cir. 1991)). Moreover, judicial estoppel only applies when a party prevails on the merits in earlier litigation. *See Robinson v. District of Columbia*, No. 13-1297, 2014 WL 317846, at *3 (D.D.C. Jan. 29, 2014) (quoting *Moses v. Howard Univ. Hosp.*, 606 F.3d 789, 798 (D.C. Cir. 2010)). The docket in Aegis UK's earlier case clearly establishes that Aegis UK voluntarily dismissed its complaint, so Aegis UK did not have occasion to argue, and a court certainly had no occasion to accept, that CPA Order 17 conferred personal jurisdiction over the defendant in that case. (*See Aegis Def. Servs. Ltd. v. Aegis Mission Essential Personnel, LLC*, No. 08-cv-407, Notice of Dismissal With Prejudice, ECF No. 3.) What is more, the prior complaint relates to a trademark infringement action, so it is not at all clear that any argument or ruling about the extent to which CPA Order 17 confers jurisdiction over such a claim in the context of the prior action would be applicable here. Accordingly, even if Aegis UK had asserted that CPA Order 17 was the basis for personal jurisdiction over the defendant in the earlier case that Alkanani cites, Aegis UK would not be estopped from taking a contrary position under the circumstances presented.

[11] In light of this conclusion, the Court need not, and does not, address the question of venue, which Magistrate Judge Kay raised and considered *sua sponte*.

38

overruled, Defendants' motion to dismiss for lack of personal jurisdiction is

**GRANTED**, and this case is **DISMISSED** with prejudice.

Date:  March 26, 2014                                    *Ketanji Brown Jackson*

                                        KETANJI BROWN JACKSON
                                        United States District Judge

39

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

KHADIM ALKANANI,                         )
                                         )
                 Plaintiff,              )
                                         )
        v.                               )   Civil Action No. 09-CV-1607 (KBJ)(AK)
                                         )
AEGIS DEFENSE SERVICES, LLC,             )
and AEGIS DEFENCE SERVICES               )
LIMITED,                                 )
                                         )
                 Defendants.             )
                                         )
_____ )

## **ORDER**

For the reasons set forth in the accompanying memorandum opinion, it is hereby

**ORDERED** that the Report and Recommendation (ECF No. 62) is adopted.  It is

**FURTHER ORDERED** that Defendant's motion to dismiss for lack of personal

jurisdiction (ECF No. 48) is **GRANTED**.  Accordingly, this case is **DISMISSED** with

prejudice in its entirety.  This is a final, appealable order.

Date:  March 26, 2014                    *Ketanji Brown Jackson*

                                         KETANJI BROWN JACKSON
                                         United States District Judge